UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------------------X

 MANUEL J. MORALES,

Plaintiff,

-against-

THE CITY OF NEW YORK, MAYOR OF THE CITY OF NEW YORK
ERIC ADAMS, BROOKLYN DISTRICT ATTORNEY ERIC
GONZALEZ, ESQ., NYPD COMMISSIONER KEECHANT SEWELL,
NYPD COMMISSIONER EDWARD CABAN, NYPD CHIEF OF
DEPARTMENT JEFFREY MADDREY, NYPD CHIEF OF PATROL
JOHN CHELL, NYPD SERGEANT RAMIL CASIMIR (BADGE # 5184,
TAX ID 950170), NYPD POLICE OFFICERS ROBERT W. STOSCH
(BADGE # 5029, TAX ID 971693), JOSEPH GUARRERA (BADGE #
19904, TAX ID 971457), ESWALDO GOMEZ (BADGE # 24162, TAX
ID 974878), KELSEY CORPAC (BADGE # 14213, TAX ID 971382),
ADAHILTON BONILLACRUZ (BADGE # 22210, TAX ID 974757),
MICHAEL BRANCA (BADGE # 11128, TAX ID 956450), DAVID
PARACHE (BADGE # 1890, TAX ID 961067), EDUARDO MORRA-
TORRES (BADGE # 21957, TAX ID 975039), ISABELA MARTINEZ
(BADGE #23427 TAX ID 975010), ESSENCE MCDONALD (BADGE #
3372, TAX ID 949300), AURIE STEIGER (BADGE # 892, TAX ID
966869), DIARY RODRIGUEZ (BADGE #27028, TAX ID 972418),
ANDREW LOGATTO (BADGE #3490, TAX ID 950765), GISENOSKI
PIERRILUS (BADGE # 27153, TAX ID 972177), JESUS MARTINEZ
(BADGE # 10210, TAX ID 968613), KENSON PHILLIPS (BADGE #
1267 , TAX ID 959070), PAUL GALLO (BADGE # 1768, TAX ID
938520), JAMAL MOYE (BADGE # 20924, TAX ID 958958), JERRY
CELUS (BADGE # 24856, TAX ID 962305), MARKELL GREEN
(BADGE # 6986, TAX ID 940213), MATTHEW STRZELCZYK (BADGE
#2191, TAX ID 953453), PEDRO PEREZ (BADGE # 20508, TAX ID
972168), ANDY RAMPADARAT (BADGE # 5261, TAX ID 967657),
JAGDEEP SINGH (BADGE # 5799, TAX ID 963760), RYAN HOFFNER
(BADGE # 17255, TAX ID 971773), FRANK BENNETT (BADGE
# 8466, TAX ID 970414), NICOLE STAHURSKI (BADGE #9112,
TAX ID 970877), JOHN FELSBERG (BADGE # 4064, TAX ID 954801),
IGOR DEMIN (BADGE # 14119, TAX ID 960447), EMILJANO
OPARAKU (BADGE # 29468, TAX ID  969261), ANGEL CABA
(BADGE # 27649, TAX ID 968981), and MDABDUL HALIM (BADGE
# 15322);

Defendants.

 ------------------------------------------------------------------------------------------X

**VERIFIED
COMPLAINT**

Index No.:

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, MANUEL J. MORALES, by his attorneys, KAISHIAN & MORTAZAVI LLC, by MARYANNE K. KAISHIAN, ESQ., an attorney duly licensed to practice before the United States District Court for the Eastern District of New York, hereby complains of Defendants as follows:

## PRELIMINARY STATEMENT

1.      On April 22, 2023, Plaintiff Manuel J. Morales ("Plaintiff" or "Mr. Morales"), a 21-year-old resident of Kings County, was lawfully present on a public sidewalk in Brownsville, Brooklyn, when Defendant NYPD Members, including Defendant PO Robert Stosch, brutally assaulted and seriously injured him without cause or justification in front of multiple civilian witnesses who recorded Defendants' abuse on cellphones.

2.      Defendant NYPD Sergeant Ramil Casimir, along with other Defendants, shoved multiple civilians and deployed copious amounts of pepper spray at recording bystanders and at Mr. Morales. None of the many Defendants present intervened.

3.      Defendants falsely claimed that this assault was lawful and necessary because Mr. Morales had, in sum and substance, "littered a box of Mike and Ikes."

4.      Following this assault, Defendants falsely arrested and excessively detained Mr. Morales in the NYPD's 73rd Precinct for approximately eight (8) hours until his release early the following morning, on April 23, 2023.

5.      Defendants presented false information to the Kings County District Attorney's Office ("Brooklyn DA") in an attempt to induce prosecutors to initiate criminal proceeding against Mr. Morales in Kings County Criminal Court. *See* **Exhibit 1**, Brooklyn DA's Office Decline to Prosecute Letter.

6.      When this failed, Defendants levied new, also false, allegations and perpetuated their abuse against Mr. Morales using the process of the New York City Summons Court, a "little-

known NYC courtroom"[1] in New York County where the NYPD and its members improperly assume the prosecutorial authority abdicated by the Defendant City's District Attorneys, including the Brooklyn DA.

7.      Unsurprisingly, Defendants utilized this power to perpetuate their abuse against Mr. Morales and to conceal their misconduct. Defendants did so without any input or intervention from the Brooklyn DA's Office, even despite the District Attorney's knowledge of the facts and the determination by the Brooklyn DA's Early Case Assessment Bureau (ECAB) that Defendants' conduct was improper. *See* **Exhibit 1**.

8.      Mr. Morales was forced to return to court on three (3) occasions to challenge the case against him.

9.      The case against Mr. Morales terminated in his favor with a dismissal granted on June 13, 2023.

10.     Defendants' misconduct continues.

11.     On or about January 30, 2024, Mr. Morales was unlawfully stopped and searched in Kings County by Defendant PO Stosch, who identified Mr. Morales by name and loudly called him "a rat," understood by Mr. Morales to refer to his decision to report the conduct of Defendant Stosch and his NYPD colleagues, including by cooperating with the New York City Civilian Complaint Review Board's investigation into the incident.

12.     Defendants caused severe injuries to Mr. Morales, including a serious, lasting injury to his right shoulder resulting in ongoing pain and reduced mobility and requiring active and ongoing medical treatment. Defendants have caused additional physical and emotional injuries to

---

[1] Graham Rayman, *Little-known NYC courtroom swells daily with summonses issued in NYPD quality-of-life crackdown*, NEW YORK DAILY NEWS, Oct. 8, 2023, *available at* https://www.nydailynews.com/2023/10/08/nyc-courtroom-swells-summonses-nypd-quality-of-life-crackdown/?clearUserState=true (last visited Feb. 27, 2024).

Mr. Morales, including ongoing fear of retaliatory abuse. The full extent of his injuries is not yet known.

13.     In addition to damages, fees, and costs, Plaintiff seeks declaratory judgment and injunctive relief through the prohibition of the Brooklyn DA and NYPD's joint policy of permitting the prosecution of Summons Court matters originating in Kings County by the NYPD.

14.     By fostering a system in which police officer tortfeasors, and their legal representatives with the NYPD, are permitted to unilaterally prosecute their victims, the existing Summons Court process is a violation of Plaintiff and similarly situated individuals' rights. This process is the result of both an impermissible abdication of duty by the Brooklyn DA and an impermissible exercise of prosecutorial authority by the NYPD.

15.     Alongside his permanent and serious injuries, the threats posed to Plaintiff by Defendants, including through the Summons Court system, are ongoing.

16.     Plaintiff now brings the instant case before this Court.

## PARTIES

17.     **PLAINTIFF MANUEL MORALES** ("Mr. Morales" or "Plaintiff") is a lifelong resident of Brooklyn, Kings County, City and State of New York.

18.     At all relevant times mentioned herein, **DEFENDANT CITY OF NEW YORK ("Defendant City" or "New York City")**, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

19.     **DEFENDANT NEW YORK CITY MAYOR ERIC ADAMS ("Defendant Adams")** was at all times relevant to this Complaint the Mayor of New York City. As Mayor,

Defendant Adams, at all relevant times, was an elected officer and the "chief executive officer of the city," New York City Charter § 3, and had final authority to appoint and/or remove any NYPD employees and agents, including the New York City Police Commissioner. As Mayor, Defendant Adams may, with the consent of the district attorney, also increase or decrease the number of positions within the district attorney's office. New York County Law § 931. He is sued individually and in his official capacity.

20.     **DEFENDANT FORMER NYPD COMMISSIONER KEECHANT SEWELL ("Defendant Sewell")** was, at all times relevant to this Complaint through June 12, 2023, the Police Commissioner of the NYPD. As Police Commissioner, Defendant Sewell, personally and/or through her authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. She is sued individually and in her official capacity.

21.     **DEFENDANT NYPD COMMISSIONER EDWARD CABAN ("Defendant Caban")** is, and was at all times relevant to this Complaint after June 12, 2023, the Police Commissioner of the NYPD. As Police Commissioner, Defendant Caban, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable. He is sued individually and in his official capacity.

22.     **DEFENDANT BROOKLYN DA ERIC GONZALEZ, ESQ. ("Brooklyn DA" or "Defendant Gonzalez")** is a duly elected official serving as District Attorney for Kings County (Brooklyn DA). The Brooklyn DA is elected to this position by the residents of Kings County, New York. It is the duty of the elected District Attorney for Kings County "to conduct all prosecutions for crimes and offenses cognizable by the courts of the county for which he or she shall have been elected or appointed." NY County Law Ch. 11 §§ 700(1) and 927. is sued in his official capacity for the sole purpose of obtaining injunctive relief, policy change, and declaratory judgment.

23.     **DEFENDANT NYPD CHIEF OF DEPARTMENT JEFFREY MADDREY ("Defendant Maddrey")** was at all times relevant to this Complaint the Chief of Department of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Maddrey had primary responsibility for NYPD operations—that is, for the police response on the street. Within the paramilitary structure of the NYPD, all NYPD uniformed members of the service were obligated to obey any lawful order given by him. He is sued individually and in his official capacity.

24.     **DEFENDANT NYPD CHIEF OF PATROL JOHN CHELL ("Defendant Chell")** was at all times relevant to this Complaint the Chief of Patrol of the NYPD who had policymaking authority over the Department. At all relevant times, as Chief of Department, Defendant Chell had primary responsibility for NYPD patrol operations, particularly operations involving stops of civilians on public streets, including stops conducted while on foot and and/or while operating vehicles. NYPD uniformed members of the service were obligated to obey any lawful order given by Defendant Chell. He is sued individually and in his official capacity.

25.     Defendant **NYPD SERGEANT RAMIL CASIMIR ("Defendant Casimir")** was a supervisor and Sergeant within the New York City Police Department. As an NYPD supervisor, Defendant Sgt. Casimir was responsible for enforcing administrative and managerial policies and procedures, including NYPD policies and applicable laws and regulations, for the individual NYPD members under his supervision. Defendant Sgt. Casimir was responsible for daily administrative decision-making and personnel assignments, discipline, training, reporting, and supervision of the lower-ranking members of the NYPD within his control. He is sued individually and in his official capacity.

26.     At all times hereinafter mentioned, **DEFENDANT NYPD POLICE OFFICERS ROBERT W. STOSCH (BADGE # 5029, TAX ID 971693), JOSEPH GUARRERA (BADGE # 19904, TAX ID 971457), ESWALDO GOMEZ (BADGE # 24162, TAX ID 974878), KELSEY CORPAC (BADGE # 14213, TAX ID 971382), ADAHILTON BONILLACRUZ (BADGE # 22210, TAX ID 974757), MICHAEL BRANCA (BADGE # 11128, TAX ID 956450), DAVID PARACHE (BADGE # 1890, TAX ID 961067), EDUARDO MORRA-TORRES (BADGE # 21957, TAX ID 975039), ISABELA MARTINEZ (BADGE #23427 TAX ID 975010), ESSENCE MCDONALD (BADGE # 3372, TAX ID 949300), AURIE STEIGER (BADGE # 892, TAX ID 966869), DIARY RODRIGUEZ (BADGE #27028, TAX ID 972418), ANDREW LOGATTO (BADGE #3490, TAX ID 950765), GISENOSKI PIERRILUS (BADGE # 27153, TAX ID 972177), JESUS MARTINEZ (BADGE # 10210, TAX ID 968613), KENSON PHILLIPS (BADGE # 1267 , TAX ID 959070), PAUL GALLO (BADGE # 1768, TAX ID 938520), JAMAL MOYE (BADGE # 20924, TAX ID 958958), JERRY CELUS (BADGE # 24856, TAX ID 962305), MARKELL GREEN (BADGE # 6986, TAX ID 940213), MATTHEW STRZELCZYK (BADGE #2191, TAX ID**

953453), **PEDRO PEREZ (BADGE # 20508, TAX ID 972168), ANDY RAMPADARAT (BADGE # 5261, TAX ID 967657), JAGDEEP SINGH (BADGE # 5799, TAX ID 963760), RYAN HOFFNER (BADGE # 17255, TAX ID 971773), FRANK BENNETT (BADGE # 8466, TAX ID 970414), NICOLE STAHURSKI (BADGE #9112, TAX ID 970877), JOHN FELSBERG (BADGE # 4064, TAX ID 954801), IGOR DEMIN (BADGE # 14119, TAX ID 960447), EMILJANO OPARAKU (BADGE # 29468, TAX ID  969261), ANGEL CABA (BADGE # 27649, TAX ID 968981), and MDABDUL HALIM (BADGE # 15322**) were all employed by the City of New York as members of the NYPD and were acting within the scope of their employment at the time of the incidents giving rise to this Complaint.

27.     At all times hereinafter mentioned, all individual Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

28.     Each and every act and omission by the individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

29.     The individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, on behalf of, and with the power and authority vested in them by Defendant City and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

30.     All Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned,

acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

31.     At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

32.     Although they were aware of the conduct, present for it, and knew or should have known it was unconstitutional, at no time did any of the Defendant NYPD Members, or any other member of the NYPD, take any steps to intervene in, the abusive and/or constitutionally and legally deficient conduct of their colleagues.

33.     The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, cloaked with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

34.     Each individual Defendant is sued in her or his individual and official capacities.

## JURISDICITON AND CONDITIONS PRECEDENT

35.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, including 1367(a), and 1441, and 42 U.S.C. § 1983.

36.     Venue is proper pursuant to 28 U.S.C. § 1391, *et seq.*, in the Eastern District of New York, where the actions complained of herein occurred.

37.     Plaintiff timely served Notices of Claim on the municipal Defendant in accordance with GML § 50-E, *et seq.*

38.     The City of New York acknowledged service of Plaintiff's Notice of Claim on June 5, 2023, but has never scheduled an examination for Plaintiff pursuant to GML § 50-H.

39.     Plaintiff inquired as to the status of the GML § 50-H examination in written correspondence sent to the New York City Comptroller's Office on November 10, November 13, and December 4, 2023. Plaintiff remained at all times ready and willing to testify.

40.     No examination was ever scheduled. Defendant City has waived its right to examine Plaintiff, as more than 90 days have elapsed without action.

41.     Plaintiff has satisfied all his obligations pursuant to New York State law to commence the instant action.

42.     The monetary damages amount sought by Plaintiff exceeds $150,000.00.

43.     At least thirty days have elapsed since service of Plaintiff's Notices of Claim and adjustment and payment thereof has been neglected or refused.

44.     This action has been initiated within one year and ninety days of the accrual of Plaintiff's claims pursuant to New York State law.

**BACKGROUND**

***New York City Summons Court***

45.     Plaintiff seeks relief, in part, in the form of declaratory judgment and injunctive relief from the *ultra vires* prosecution of Kings County summons matters by the NYPD itself in New York County Summons Court.

46.     As described herein, the Summons Court process in New York City permits cases not brought for prosecution by the five boroughs' elected district attorneys to be prosecuted directly by members of the NYPD and/or the NYPD's Legal Bureau.

47.     There is no legal authority for this widespread abdication of duty by the district attorneys to the NYPD. Historically, district attorneys and the NYPD have entered into Memorandums of Understanding (MOUs) to create these systems of prosecution.[2]

48.     Matters arising in Kings County are prosecuted by NYPD in New York County Summons Court, located at the New York County Criminal Court, located within the David N. Dinkins Memorial Courthouse at 1 Centre St., in the City, County, and State of New York.

49.     The Brooklyn DA has chosen not to prosecute these summons matters in Kings County—or at all—and is aware that the NYPD is prosecuting Kings County matters in New York County Summons Court.[3]

50.     During an encounter with the NYPD, a person accused of low-level misdemeanors and certain violations may be issued a "pink slip," or ticket, instructing them to appear in Summons Court.[4]

51.     There is simply no meaningful oversight of the NYPD's issuance and prosecution of these cases.

52.     In general, complainant NYPD members are not interviewed by a prosecutor before charges are levied against an accused person.

53.     Or, as in the instant matter, a prosecutor may review arrest charges and evidence and deem the matter insufficient for prosecution by their office, only to take no responsibility for ensuring that the matter is not pursued, or otherwise misrepresented, by the NYPD on the Brooklyn

---

[2] The MOU between the New York County DA and the NYPD was included in Petitioners' filings *In the Matter of Jeffryes et al. v City of New York et al.* (2017 NY Slip Op 27325), as discussed in greater detail beginning at ¶ 112, *infra*. At the time of this Complaint's filing, a FOIL request to the Brooklyn DA for this information or related agreements remained pending, with an anticipated fulfillment date in June 2024.
[3] In addition to the myriad issues posed by this policy and presented herein, residents of Kings County, such as Plaintiff, are further disadvantaged by the requirement that they must travel interborough to appear in summons matters for each and every court appearance.
[4] Although CPL § 150.20(1) mandates appearance tickets for most low-level charges, NYPD Defendants frequently place individuals stopped and accused of these violations under impermissible custodial arrest.

DA's borrowed authority.

54.     In cases prosecuted in Summons Court, the complainant is the very NYPD officer who executes the summons and prosecutes the case.

55.     The City's district attorneys are governed by New York County Law § 700, *et seq.*, and other legal restraints and mandates in accordance with their elected position, including the requirement to pursue just outcomes rather than simply convictions.

56.     In addition to being free from any such constraints, the NYPD bears a specific and impermissible relationship to and interest in procuring a conviction in these cases, not least when the matter involves issues of potential civil liability for the complainant officer and/or their colleagues.

57.     The NYPD members prosecuting summons matters are occasionally assisted by the NYPD's Legal Bureau.

58.     While the NYPD's attorneys are, ostensibly, available to be consulted in such matters, NYPD Legal Bureau attorneys are generally not present for or otherwise involved in prosecutions.

59.     At Plaintiff's trial date, for example, Plaintiff's assailant-prosecutor, Defendant PO Stosch, claimed to need to consult the NYPD Legal Bureau when he was posed essential procedural and discovery-related questions he lacked sufficient legal knowledge to answer.

60.     However, this consultation, if it occurred, did not result in adjustments to Defendant PO Stosch's impermissible conduct, including withholding essential discovery.

61.     In fact, Defendant PO Stosch affirmatively maintained that he was ready to proceed to trial against Plaintiff without disclosing mandatory discovery.

62.     This discovery included essential records, including video footage, which

Defendant PO Stosch conceded existed but that he would not, or could not, provide.

63.     Defendant PO Stosch denied that he had the ability to access or share the body camera footage of other NYPD members involved in Plaintiff's assault and arrest.

64.     Defendant PO Stosch further denied that it was his responsibility, as the prosecutor and/or representative of "the People," to provide such records despite the requirement for the prosecution to do so under the <u>New York State Criminal Procedure Law</u> (CPL), including <u>CPL § 245.20(1)</u>.

65.     Upon the fulfillment of Plaintiff's FOIL request to the Brooklyn DA (**Exhibit 1**), after the conclusion of Plaintiff's summons matter, it was clear that the body-worn camera footage in question, along with other records demanded by Plaintiff as part of pretrial discovery but never produced by Defendant PO Stosch, had been provided to the Brooklyn DA by Defendants *on the same day as Plaintiff's arrest*.

66.     Nevertheless, Defendant PO Stosch executed a Certificate of Compliance (COC) pursuant to <u>CPL § 245.50(1)</u> falsely affirming that "the People have disclosed and made available to the defendant all known material and information that is subject to discovery." *See* **Exhibit 2**, COC.

67.     The Brooklyn DA either did not review this COC or permitted the false COC to stand.

68.     The Brooklyn DA permitted Defendant PO Stosch's false statements and malicious prosecution of Plaintiff to proceed before the court without intervention, despite the Brooklyn DA's duties to Plaintiff, a Kings County constituent, and despite the Brooklyn DA's possession of discoverable records and knowledge of the underlying facts.

69.     Even if NYPD Legal Bureau attorneys were present and/or available for the

summons court proceedings, the NYPD Legal Bureau represents the interests of the NYPD members, including by providing legal advice regarding police actions and allegations of police misconduct.[5]

70.     The NYPD Legal Bureau's involvement presents its own irreconcilable conflict of interest and does nothing to mitigate the conflict inherent to the direct prosecution of New Yorkers by complainant-officers in summons matters—or vice versa.

### Disparate Enforcement of Summons Matters

71.     Unsurprisingly, as predicted by decades of data based on the racial and economic disparities in low-level arrests by the NYPD, the Department disparately targets Black and Latin New Yorkers such as Plaintiff for prosecution in summons matters.

72.     Anecdotally, in reporting on the summons process in October 2023, *The Daily News* observed: "On a recent day when 550 people were on the docket, the vast majority were Black or Hispanic, with a tiny handful of white folks dotting the gallery."[6]

73.     This is a straightforward observation of demonstrable fact.

74.     According to Office of Court Administration data obtained by the *Daily News*, among cases prosecuted in Summons Court in 2022, 58% of people were listed as Black or Hispanic, 6% were white, 4% were Asian, and 21% did not have their race listed. Meanwhile,

---

[5] *See, e.g.*, *Matter of Jeffryes v Vance* (2017 NY Slip Op 27325) (NY Co. 2017) ([I]t surely is unfair if the prosecutors are concerned about protecting their employer and co-employees from civil liability, rather than being solely concerned about achieving justice for the people of the county, who elected the District Attorney to accomplish that objective above all else. This interest in protecting the Police Department from civil liability for damages thus may be viewed as a pecuniary interest of the prosecuting attorney's employer, superiors, and co-employees, quite apart from any economic benefits through achieving justice and serving the public. The District Attorney, of course, is not and may not be burdened with such separate interests in insulation from civil liability.") (internal citations omitted).
[6] Graham Rayman, *Little-known NYC courtroom swells daily with summonses issued in NYPD quality-of-life crackdown*, NEW YORK DAILY NEWS, Oct. 8, 2023, *available at* https://www.nydailynews.com/2023/10/08/nyc-courtroom-swells-summonses-nypd-quality-of-life-crackdown/?clearUserState=true (last visited Feb. 27, 2024).

2022 US Census figures show that white people account for 40% of the city's population, Black people account for 23%, and Latin people account for 29%.[7]

75.     The NYPD's utilization of Summons Court has increased drastically alongside a documented resurgence of stop-and-frisk and so-called "quality of life" enforcement practices by the Department.

76.     This practice is expanding, placing more New Yorkers, including Plaintiff, at risk of further abusive conduct by the NYPD.

77.     For matters originating in Kings County, there was an 112% increase in summons matters prosecuted in New York County Court, from 12,347 in the first eight months of 2022 to 26,140 in the first eight months of 2023.[8] Plaintiff's case accounts for one among many cases brought for prosecution in this impermissible manner.

78.     The Defendant Policymakers, including Defendants Adams, Caban, Maddrey, and Chell, are actively creating, implementing, enforcing, and condoning policies and practices designed to circumvent New Yorkers' rights against unlawful searches and seizures in the name of "quality of life" enforcement, and concealing police abuse occurring during these encounters by utilizing a system exclusively controlled by the Department itself.

79.     Indeed, the Policymaker Defendants have all publicly supported increasing street stops, or "stop-and-frisk" policies, and have publicly opposed transparency and recording requirements for these same encounters, including the passage of the How Many Stops Act by the New York City Council.

80.     Until the How Many Stops Act is implemented, the issuance of a summons eliminates the requirement for the NYPD to keep records, including arrest records, that might later

---

[7] *Id.*
[8] *Id.*

be utilized to challenge police conduct related to a low-level charge levied after a street encounter with police.

81.     Amidst this deluge of street stops, each stop that fails to produce a gun, felony-weight quantities of controlled substances, or another indictable offense—in other words, the vast majority of NYPD street stops[9]—places the targeted person at risk of prosecution by the NYPD in Summons Court.

82.     The Federal Monitor responsible for investigating and reporting NYPD compliance with court directives and constitutional requirements in the Southern District of New York under *Floyd, et al. v. City of New York*, 08-CV-1034 (AT), *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT), and *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT) released an interim report on February 22, 2024. *Floyd*, Dkt. 923.

83.     The Federal Monitor reported its findings regarding the NYPD's lack of compliance with conduct and reporting requirements related to street encounters to be "quite unsettling," and determined "that the NYPD is not in compliance with the Court-ordered reforms in these cases." *Id*.

84.     The information presented to the Court included data showing "unconstitutional reported stops increasing from 10.6% in 2021 to 11.3% in 2022." *Id*. The Federal Monitor further reported: "Unconstitutional frisks rose from 15.8% in 2021 to 23.9% in 2022. Unlawful searches rose from 20.4% in 2021 to 29.9%." *Id*.

85.     As the Federal Monitor emphasized, "These increases are substantial." *Id*.

---

[9]  *See*, *e.g.*, NYPD Stop and Frisk Data, *available at* https://www.nyc.gov/site/nypd/stats/reports-analysis/stopfrisk.page; *see also* Samantha Max, *NYPD data: Few weapons turned up in more than 15,000 pedestrian stops in 2022*, GOTHAMIST, April 27, 2023, *available at* https://gothamist.com/news/nypd-data-few-weapons-turned-up-in-more-than-15000-pedestrian-stops-in-2022 (last visited February 29, 2024).

86.     As discussed above, the number of NYPD street stops and summonses are trending upward for the period encompassing Defendant Adams' tenure.

87.     While the 2022 total street stop numbers were not reported by the NYPD to be as high as the total number of stops at the onset of the Federal Monitor's appointment in 2013, the Federal Monitor identified both underreporting and disparate race-based enforcement as significant ongoing issues. *Id*. The Monitor found that the "overall share of stops and arrests by race and ethnicity remained largely unchanged," with "much of the racial disparities in 2022…driven by the high rate of stops in a limited number of specific neighborhoods and precincts." *Id*.

88.     The residents of Kings County are at heightened risk of the NYPD conduct complained of herein.

89.     Indeed, when the number of NYPD street stops increased citywide from 9,000 in 2021 to 15,000 in 2022, two of the three NYPD precincts responsible for the greatest share of the increase were in Kings County.[10] One was the 73rd Precinct; the other was the 75th Precinct, located in neighboring East New York.[11]

90.     Brownsville, Brooklyn, where the 73rd Precinct is located, is where Plaintiff was arrested and where his family still resides. 75% of Brownsville residents are Black and 21% are Latin.[12] 29% of all residents live below the poverty line, far greater than the 18% citywide average.[13]

---

[10] *See, e.g.*, NYPD Stop and Frisk Data, *available at* https://www.nyc.gov/site/nypd/stats/reports-analysis/stopfrisk.page; *see also* Samantha Max, *NYPD data: Few weapons turned up in more than 15,000 pedestrian stops in 2022*, GOTHAMIST, April 27, 2023, *available at* https://gothamist.com/news/nypd-data-few-weapons-turned-up-in-more-than-15000-pedestrian-stops-in-2022 (last visited February 29, 2024).
[11] *Id*.
[12] The City of New York, Community Health Profiles, Brooklyn 316: Brownsville, *available at* https://a816-health.nyc.gov/hdi/profiles/ (last visited February 28, 2024).
[13] *Id*.

91.     Data from Brownsville in 2023 shows that "[e]very category of low-level police enforcement is up in the precinct."[14]

92.     The 73rd Precinct issued 382% more summonses to people in Brownsville between January and May 2023, with 1,431, than were issued during the same period in 2022, which still saw 297 people summoned for prosecution by the NYPD in less than four months.[15]

93.     In the NYPD's Police Service Area 2, which overlaps geographically with the 73rd, 75th, and 71st Precincts but whose members are specifically assigned to police New York City Housing Authority (NYCHA) developments and adjacent public spaces, there was a 2,000% spike in summonses issued during this same time.[16] Plaintiff is also a NYCHA resident.

94.     This places Kings County, and Brownsville specifically, far ahead of the citywide pace, which still reflects the concerning statistic that criminal court summonses this year are up by 95% overall.[17]

95.     In the NYPD's Police Service Area 2, which covers all public housing developments and surrounding areas in Brownsville, including those adjacent to the site of Plaintiff's arrest, reflected a spike in summons issuances of more than 2,000% in the first three months of the 2023 when compared to the same period in 2022.[18]

96.     Though data reflects that summonses have been issued across the City at 95% higher rates than in 2022, a concerning statistic on its own, statistics place Kings County, and specifically Brownsville, as the epicenter of this explosion in NYPD activity.[19]

---

[14] Graham Rayman, *Crime is down in one Brooklyn neighborhood, but residents say aggressive NYPD policing is oppressive and discriminatory*, The New York Daily News, June 26, 2023, *available at* https://www.nydailynews.com/2023/06/24/crime-is-down-in-one-brooklyn-neighborhood-but-residents-say-aggressive-nypd-policing-is-oppressive-and-discriminatory/ (last visited February 29, 2024).
[15] *Id*.
[16] *Id*.
[17] *Id*.
[18] *Id*.
[19] *Id*.

*Consequences of NYPD Summons Court Prosecutions*

97.    While the charges levied in Summons Court matters may not generally carry the threat of prison sentences or even the likelihood of a criminal conviction, the potential and realized impacts of this system on the lives of New Yorkers including Plaintiff are numerous and consequential. The administration of Summons Court by the NYPD works against the public interest of fairness and transparency in the Defendant City's courts.

98.    Many summons cases, including Plaintiff's, are ultimately dismissed. However, even matters that are ultimately dismissed and sealed are hardly without consequence.

99.    While open, the matter can, and often does, appear on standard background checks conducted by employers, post-release supervision agencies, and other entities whose determinations in these instances are of tremendous consequence.

100.    While a matter remains pending, whether due to ongoing litigation or under the terms of an ACD, accused people are also discouraged from participating in forums where their testimony may be used in the prosecution against them.

101.    This includes interviews with the City's Civilian Complaint Review Board (CCRB) or NYPD's Internal Affairs Bureau (IAB).

102.    As anyone who has been privy to this process, including Plaintiff's Counsel, can attest, the interviews or inquiries often include admonishments from investigators that the testimony may be used against the witness and/or victim in court.

103.    Forcing individuals to appear to court on *ultra vires* prosecutions also requires them to disrupt their daily lives regardless of the ultimate outcome, including through taking time off of work, arranging childcare, and traveling to and from their appearances. For individuals travelling

to Manhattan from Kings County, this often means more than one hour each way on public transportation.

104.    The Summons Court process also eats away at critical time for collecting evidence. As Defendants routinely agree in other contexts, the greater the delay in reporting, the less likely it is that important evidence can be recovered, including witness information and surveillance footage from non-police sources.

105.    Furthermore, not all accused people receive a dismissal; in fact, Plaintiff was potentially unique in his ability, at that time, to be able to return to court on three separate occasions to secure this outcome and is hardly guaranteed the same outcome in the future.

106.    Absent the favorable termination of an accused person's summons matter, critical vehicles for identifying and vindicating police misconduct allegations are rendered unavailable. These include claims such as false arrest and malicious prosecution.

107.    This remains true even if a person accepts the non-criminal resolutions dangled before them in Summons Court, including pleas to dispositions such as the ubiquitous Disorderly Conduct violation under Penal Law (P.L.) § 240.20.

108.    The standard plea language for a person pleading to this violation generally emphasizes that the provision is "a violation, not a crime." Still, under the standards set forth in *Thompson v Clark* (596 U.S. 36), this is not a "favorable termination" for the purpose of many arrest-related civil rights claims, specifically those for which lack of probable cause is an essential element of the claim. This provision also carries a potential fifteen (15) day jail sentence.

109.    The acceptance of an Adjournment in Contemplation of Dismissal (ACD) with any considerations, such as a single day of community service or a waiver of seized property, also eliminates critical avenues of civil relief.

110.    The standard ACD, without additional considerations, is arguably, but not yet definitively, a "favorable termination" under *Thompson*. This common resolution to summons matters also introduces significant hardships and hurdles to accountability.

111.    Upon the defense's motion for an ACD, if offered by the Court, the matter remains open for six (6) months.

112.    The matter in which the ACD was granted may also be reopened and prosecuted anew in the event of the accused person's rearrest prior to the date of dismissal and sealing, making this person even more vulnerable than usual for six months to the whims of the prosecuting agency itself: the NYPD.

113.    The standard admonishment issued by the court when granting an ACD — "stay out of trouble for six months" — sounds more like an ominous threat in this context, where it is the NYPD who determines what defines "trouble," who is charged for it, and how those prosecutions proceed.

114.    As further evinced through Plaintiff's specific experience, detailed *infra*, the Summons Court process is an impermissible abdication of prosecutorial authority by the Brooklyn DA, and an impermissible exercise of the same by the NYPD.

115.    The Defendants have created and/or participated in a system that is not only unlawful but is ideal for laundering police misconduct through the Defendant City's courts.

### *Matter of Jeffryes*

116.    A less sweeping iteration of the summons court practice, though stemming from matters arising in New York County, has been challenged before in New York County Supreme Court as part of a New York Civil Practice Laws and Rules Chapter 8, Article 78 (CVP Art. 78) proceeding. *Matter of Jeffryes v Vance*, 2017 NY Slip Op 27325.

117.    In 2017, Arminta Jeffryes and Cristina Winsor were charged in summons matters related to their participation in Black Lives Matter protests. *Id*.

118.    At the time of the Court's decision, the criminal matters against Petitioners Jeffryes and Winsor remained pending in Summons Court with the NYPD prosecuting these cases. *Id*.

119.    The Court did not issue a final determination, but rather denied the NYPD and DA respondents' motions to dismiss and granted a stay to the proceeding pending the resolution of petitioners' criminal matters. *Id*.

120.    In denying respondents' motion to dismiss, the Court reasoned that petitioners' action could be reinitiated as an appropriate channel for relief if petitioners' related criminal matters terminated favorably. *Id*. at 2-3 ("If petitioners are not convicted…they will have suffered prosecutions that they no longer may contest through an appeal of those determinations. At that point, the evidentiary record will have expanded, potentially to show more fully whether or not the delegation was unlawful and entailed an impermissible conflict and what harms petitioners have suffered as a result: a record different from the one on which the Criminal Court based its determinations.") (internal citations omitted).

121.    Though petitioners' charges were ultimately dismissed, they did not resume the action. The NYPD and the New York County DA withdrew the existing MOU between them.[20]

122.    The constitutional and statutory deficiencies in the practices challenged in *Jeffryes*, regardless of the age or existence of a MOU, remain ripe for determination.

123.    The alleged potential for Police Department prosecutors' conflict of interest set forth above, whether or not framed as an overstepping of authority, violates the accused's federal

---

[20] *See* March 7, 2018 Letter Rescinding MOU from Lawrence Byrne, NYPD Deputy Commissioner of Legal Matters, to Cyrus Vance, Esq., Manhattan DA, *available at* https://images.law.com/contrib/content/uploads/documents/389/24153/Byrne-letter-MOU.pdf.

and state constitutional rights to procedural due process because the potential conflict undermines 'the reliability of the adversary process through which criminal justice is . . . dispensed.' The potential conflict raises a claim that the Police Department prosecutors are not 'exercising pretrial prosecutorial discretion in an evenhanded manner, based on the merits of the case or other legitimate prosecutorial concerns.'" (internal citations omitted).

124.    Moreover, the striking issues regarding conflicts of interest, abdication of duties, opportunities for abuse, and due process violations identified by the court have been compounded and expanded under the current iteration of the Kings County summons process.

## STATEMENT OF FACTS

### *April 22, 2023*

125.    On April 22, 2023, at approximately 5:00 PM, Plaintiff, Manuel Morales, was lawfully present and walking along a public sidewalk at or near 428 Mother Gaston Blvd. (a/k/a Stone Ave.) in Kings County, New York.

126.    Defendants, including **DEFENDANT PO STOSCH**, **DEFENDANT SGT. CASIMIR**, and **DEFENDANT PO GUARRERA**, were traveling in an unmarked NYPD vehicle while slowly circling the block on which Mr. Morales and his companions were traveling.

127.    These Defendants circled the block in their unmarked vehicle repeatedly, making impermissible turns on Mother Gaston Blvd. to pass Mr. Morales and his companions approximately three (3) times.

128.    Mr. Morales and his companions continued to conduct themselves in an entirely lawful manner.

129.    After the third pass in the unmarked police vehicle, Defendants Stosch, Casimir, and Guarrera abruptly stopped the NYPD vehicle, obstructing traffic on Mother Gaston Blvd., and exited rapidly.

130.    The Defendants' sudden approach confused Mr. Morales and his companions, who had committed no offenses.

131.    Mr. Morales began to record from his cellphone.

132.    While Defendants initiated their approach, Mr. Morales calmly asked Defendants, "I got ID on me. Why are you hopping out on me?"

133.    Defendant Stosch stated, "Because you littered."

134.    Mr. Morales, seeking clarification, inquired, "I littered?"

135.    Defendant Stosch stated, "Yeah, you threw Mike and Ikes on the floor."

136.    Defendants immediately surrounded Mr. Morales and forced him backwards against the brick wall of an adjacent building.

137.    Mr. Morales provided his name and his legal New York State identification to Defendants without hesitation. He complied with all lawful orders.

138.    Mr. Morales' companions lawfully voiced objections to Mr. Morales' detention, stating that he had not done anything wrong.

139.    At least one companion also began to record the interaction.

140.    These individuals posed no threat to Defendants and were not breaking any laws.[21]

141.    Mr. Morales assured his companions that he would be fine and they should remain calm, and remained calm himself, a fact specifically noted by the Brooklyn DA in ECAB as cause for declining to prosecute the matter.

---

[21] *See* New York City Admin. Code § 14.189.

142.    Suddenly, and without cause or justification, Defendants, including Defendants Stosch, Guarrera, and Casimir, threw Mr. Morales to the sidewalk face-first.

143.    Defendant Stosch placed his body weight on Mr. Morales' back, straddling Mr. Morales and shoving his face into the brick wall of the nearby building and against a metal pipe in the building's façade.

144.    Mr. Morales repeatedly cried out that he could not breathe.

145.    Defendant Stosch wrapped metal handcuffs around his right fist. He then raised this fist at Mr. Morales' face, and stated, in sum and substance, "If you don't stop moving I will punch you in the f——g face."

146.

 

*The white male individual depicted straddling Plaintiff in two still images in ¶ 146 was the acting prosecutor in Plaintiff's summons matter, Defendant PO Stosch.*

147.    Defendants' brutal assault of Mr. Morales on a public sidewalk in Brownsville caused a small crowd to form.

148.    Still, the bystanders were outnumbered by the NYPD members, including the named NYPD member Defendants, who continued to arrive during Defendants' assault.

149.    Bystanders recorded the assault on cellphones and begged Defendants to cease their assault of Mr. Morales, including by stating, "He told you he can't breathe. He cannot breathe."

150.    In response, Defendant Sgt. Casimir, and at least two other named Defendants, shoved several civilians and began to deploy a chemical spray, believed to be oleoresin capsicum spray, in a wide radius against recording bystanders and eyewitnesses.

151.    Defendant Sgt. Casimir struck Mr. Morales with this spray, further hindering his ability to breathe, causing him pain and burning to his eyes, nose, throat, and chest, and exacerbating his suffering.

152.    Defendant Stosch, applied overly tight handcuffs to Mr. Morales' wrists, causing pain, bruising, swelling, and lasting pain.

153.    Defendants, including Defendant Stosch, yanked Mr. Morales to a standing position by yanking on his shoulders and handcuffed arms.

154.    Defendant Stosch then forcibly shoved Mr. Morales to a waiting NYPD vehicle, striking his head against the vehicle and shoving him into the back seat.

155.    At least two Defendants transported Mr. Morales to the 73rd Precinct.

156.    Defendant NYPD Police Officers Eswaldo Gomez (Badge # 24162, Tax ID 974878), Kelsey Corpac (Badge # 14213, Tax ID 971382), Adahilton Bonillacruz (Badge # 22210, Tax ID 974757), Michael Branca (Badge # 11128, Tax ID 956450), DavID Parache (Badge # 1890, Tax ID 961067), Eduardo Morra-Torres (Badge # 21957, Tax ID 975039), Isabela

Martinez (Badge #23427 Tax ID 975010), Essence Mcdonald (Badge # 3372, Tax ID 949300), Aurie Steiger (Badge # 892, Tax ID 966869), Diary Rodriguez (Badge #27028, Tax ID 972418), Andrew Logatto (Badge #3490, Tax ID 950765), Gisenoski Pierrilus (Badge # 27153, Tax ID 972177), Jesus Martinez (Badge # 10210, Tax ID 968613), Kenson Phillips (Badge # 1267 , Tax ID 959070), Paul Gallo (Badge # 1768, Tax ID 938520), Jamal Moye (Badge # 20924, Tax ID 958958), Jerry Celus (Badge # 24856, Tax ID 962305), Markell Green (Badge # 6986, Tax ID 940213), Matthew Strzelczyk (Badge #2191, Tax ID 953453), Pedro Perez (Badge # 20508, Tax ID 972168), Andy Rampadarat (Badge # 5261, Tax ID 967657), Jagdeep Singh (Badge # 5799, Tax ID 963760), Ryan Hoffner (Badge # 17255, Tax ID 971773), Frank Bennett (Badge # 8466, Tax ID 970414), Nicole Stahurski (Badge #9112, Tax ID 970877), John Felsberg (Badge # 4064, Tax ID 954801), Igor Demin (Badge # 14119, Tax ID 960447), Emiljano Oparaku (Badge # 29468, Tax ID  969261), and Angel Caba (Badge # 27649, Tax ID 968981) were present for and/or participated in the arrest, assault, and transportation of Mr. Morales.

157.     No Defendants intervened in these assaults at any time.

158.     Mr. Morales remained in police custody for approximately eight (8) hours while in severe pain.

159.     Mr. Morales needed urgent medical care and expressed that he wished to go to a hospital. However, Defendants denied and/or delayed Plainitff's medical care, causing additional suffering and exacerbating his serious injuries.

160.     Defendants refused to loosen the overly tight metal handcuffs applied to Mr. Morales's wrists despite his requests and insistence that he was in pain.

161.     Mr. Morales was released at approximately 2:15 AM on April 23, 2023, with a summons instructing him to appear in New York County Summons Court on May 11, 2023.

***Summons Court Proceedings***

162.    Defendants, including Defendants Sgt. Casimir and PO Stosch, presented false allegations against Mr. Morales for prosecution by the Kings County District Attorney ("Brooklyn DA") to induce a criminal prosecution.

163.    In their presentation to prosecutors, Defendants falsely alleged that Mr. Morales had littered "a box of Mike and Ikes," a non-criminal violation of local law.

164.    Defendants further falsely alleged that Mr. Morales had engaged in disorderly conduct and that he obstructed governmental administration and resisted arrest after they lawfully sought to place him under arrest for this charge.

165.    The Brooklyn DA declined to prosecute the case against Mr. Morales—in Brooklyn.

166.    After the Brooklyn DA declined to pursue the case against Mr. Morales, citing Defendants' wrongful conduct in arresting Mr. Morales, Defendants pursued another avenue of abuse and harassment: summoning Mr. Morales for prosecution in New York County.

167.    Defendants, including Defendant Stosch, brought the case against Mr. Morales before New York County Summons Court, where the NYPD is afforded prosecutorial authority reserved for the City's District Attorneys.

168.    To accomplish this, Defendants, having been turned away by prosecutors with the Brooklyn DA, fabricated new charges against him.

169.    Defendants issued Mr. Morales a Summons bearing Summons # 4454947283, endorsed by Defendant Stosch and later assigned Docket # 2023SK012230, falsely accusing Mr. Morales of having committed the violation offense of Admin. Code § 10-133(c), a charge carrying a potential $300 fine and possible fifteen (15) day jail sentence.

170.    The elements of this offense are that a person, 1) in a public place, street, or park, 2) wears outside of his or her clothing, or carries in open view 3) any knife, and 4) does so without using the knife for a lawful purpose.

171.    In this instance, Defendants falsely alleged that Mr. Morales possessed a legal knife, but that the handle of this otherwise legal item was visible to the public when he was approached by police.

172.    This was categorically false; body-worn camera video viewed by the Brooklyn DA and multiple angles of cellphone footage readily discredits this claim.

173.    Defendants made no mention of a knife or *any* weapon in any of the documentation provided to the Brooklyn DA by Defendants or the NYPD.

174.



*For example, Mr. Morales' arrest report, depicted in relevant part above in ¶ 174, Defendant Stosch denied that any weapons were acquired from Plaintiff and further denied using force.*

175.    This arrest report denying that weapons were recovered from Plaintiff was provided by the Brooklyn DA in response to Plaintiff's FOIL request.

176.    It was not provided to Plaintiff by Defendant PO Stosch.

177.    Mr. Morales was forced to return to Court on three (3) separate occasions.

178.    On May 11, 2023, Mr. Morales was offered an Adjournment in Contemplation of Dismissal to resolve his case. The Court extended the offer and occupied the role of prosecutor at the initial appearance without having reviewed the evidence presented to the Brooklyn DA.

179.    Mr. Morales, through his Counsel, declined to move for the ACD, and chose to proceed to trial to vindicate himself.

180.    There was no attorney present to prosecute the case against Plaintiff.

181.    The matter was adjourned to May 24, 2023.

182.    On May 24, 2023, Mr. Morales returned to Summons Court prepared to proceed.

183.    Present on behalf of the prosecution, identifying himself as representing "the People of the State of New York" (*see* **Exhibit 2**), was Defendant PO Stosch.

184.    At the May 24, 2023, appearance, Defendant PO Stosch, acting as a prosecutor, claimed to be ready to proceed to trial.

185.    Despite this declaration and his role as prosecutor, Defendant PO Stosch claimed, in sum and substance, not to have access to his colleagues' body camera footage.

186.    Upon questioning by Counsel, Defendant PO Stosch further claimed not to have access to or possession of myriad items of mandatory discovery, including Use of Force reports, aided cards, *Giglio* material, witness statements, and precinct footage.

187.    Defendant PO Stosch claimed, in sum and substance, that the Court should, and would, permit him to proceed without disclosing this discovery to Counsel.

188.    Indeed, Defendant PO Stosch executed a Certificate of Compliance pursuant to CPL § 245.50(1) claiming "the People have disclosed and made available to the defendant all known material and information that is subject to discovery." **Exhibit 2**, COC and Discovery Inventory.

189.    In fact, Defendant PO Stosch had provided Mr. Morales, through his Counsel, only very limited documentary discovery before attempting to proceed.

190.    This limited discovery included Defendant Stosch's own memobook entries, a copy of the summons, somewhat inexplicable documents proving that the Defendants had taken cash from Mr. Morales' to purchase food, and several mistakenly disclosed documents from the unrelated arrest of another person.

191.    Mr. Morales, through Counsel, insisted that the outstanding disclosures were mandatory, that no trial should take place absent the disclosures, and that the missing materials rendered the Certificate of Compliance invalid.

192.    The court ultimately adjourned the matter to June 13, 2023.

193.    Mr. Morales returned to Summons Court for a third time on June 13, 2023, again prepared to proceed to trial.

194.    On that date, rather than informing the court, and Mr. Morales, that the matter would not be pursued further, Defendant PO Stosch took advantage of a Summons Court policy affording NYPD members a several-hour-long grace period to appear in court before being deemed absent.

195.    This move forced Mr. Morales to wait in court until approximately 12:00 PM, at which time the court conceded that Defendant PO Stosch, the prosecutor, had failed to appear.

196.    Accordingly, on June 13, 2023, the case against Mr. Morales terminated in his favor with a dismissal.

197.    Still, the threat these policies pose to Mr. Morales is ongoing, and exceeds well beyond mere speculation of further harm.

198.    Indeed, Defendants have subjected Mr. Morales to further violations and retaliation for challenging Defendants' conduct.

*January 30, 2024*

199.    On or about January 30, 2024, at approximately 9:00 PM, Mr. Morales was lawfully present at or near the intersection of Mother Gaston Blvd. and Sutter Ave. in Kings County.

200.    At the above approximate time and place, Mr. Morales was wrongly seized by Defendants, including Defendant Stosch and another individual Defendant, believed to be **DEFENDANT PO MDABDUL HALIM**, without cause or justification.

201.    In initiating this encounter, Defendant PO Stosch loudly stated that, in sum and substance, Plaintiff was "a rat."

202.    Defendants Stosch and Halim unlawfully detained Mr. Morales and searched his person and belongings without consent or cause before releasing him without charges.

203.    Mr. Morales understood Defendant PO Stosch to be referring to his decision to report Defendants for their abuses against him, and he further understood this detention to be a warning against future participation in these processes.

204.    These encounters have caused Mr. Morales further fear of reprisal, anxiety when leaving his home, and to suffer actual chill when engaging in protected activities, including free association with friends and family in public places.

*Damages*

205.    Defendants have caused Mr. Morales to suffer significant damage and loss of mobility to his right shoulder, which greatly impacts his ability to work, sleep, and perform daily tasks, including caring for his infant son.

206.    Mr. Morales requires ongoing and regular medical care. He is currently attending physical therapy appointments for his shoulder injury on a weekly basis.

207. Mr. Morales suffered lost wages, was forced to expend costs including transportation and medical costs and will suffer future lost income due to Defendants' conduct, their deprivation of his liberty, and his physical injuries.

208. As a result of Defendants' conduct, Mr. Morales further suffered bruising, lacerations, and scarring to his face, right leg, hands, and both knees. He suffered pain, swelling, and loss of sensation to his wrists from Defendants' application of overly tight handcuffs. He suffered difficulty breathing, compression-related pain to his chest that persisted for several weeks, and pain and loss of mobility in his lower back.

209. Defendants further caused Mr. Morales emotional and psychological damages, including anxiety, fear of death, difficulty sleeping, humiliation, emotional anguish, depression, and post-traumatic stress.

210. The full extent of Mr. Morales' physical and psychological injuries is not yet known, and their effects are ongoing.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment
### *Declaring the Prosecution of Summons Court Matters by the NYPD an Ultra Vires Act Under the New York State Constitution and New York Law*

211. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

212. Plaintiff requests this Court's declaration that the prosecution of Summons Court matters by the NYPD, and the Brooklyn DA's abdication of responsibility in authorizing the same, constitute an *ultra vires* act in violation of the New York State Constitution and an otherwise impermissible delegation and exercise of authority.

213.     Under Art. 13, § 13 of the New York State Constitution, the Brooklyn District Attorney serves in an elected office, the duties of which are defined by statute, including New York County Law §§ 700(1) and 927.

214.     New York law provides no basis for the delegation of prosecutorial power except in specific circumstances not applicable here, and certainly not in all Summons Court matters, a nebulous category of cases subject to *ad hoc* determinations by the NYPD.

215.     In fact, County Law § 701, the only provision permitting the appointment of another entity to act as prosecutor over a subset of cases, is available only for the court to appoint a special prosecutor in instances of a district attorney's absence or disqualification. Under § 701(4), these appointments are permitted for transitory purposes only.

216.     To the extent the Brooklyn DA and his assistant attorneys might be considered "absent" from summons prosecutions in New York County, this is not absence within the meaning of the law.

217.     The fact that the Brooklyn DA does not staff the courtroom where summons matters are heard is a result of the impermissible prosecution of Kings County matters by another agency in another county entirely. *See*, *e.g.*, **Exhibit 2**, COC, naming the venue as "Criminal Court of the State of New York, County of Kings," despite the prosecution occurring entirely in New York County Criminal Court.

218.     The Brooklyn DA has not only failed to establish that the Office will retain supervision over the NYPD's prosecution of these matters, but, as clearly illustrated in the instant matter, has firmly established that it *will not*.

## SECOND CLAIM FOR RELIEF

**Injunctive Relief**
***Prohibiting the Prosecution of Kings County Summons Court Matters by the NYPD***

219.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

220.     Plaintiff requests injunctive relief in the form of policy change prohibiting the delegation of prosecutorial authority by the Brooklyn DA to the New York City Police Department.

221.     Through the allegations and evidence contained herein, Mr. Morales has sufficiently established that the likelihood of irreparable harm absent injunctive relief, the likelihood of Plaintiff's success in this action on the merits, and the public's interest all weigh in favor of granting an injunction.

222.     Plaintiff further request that this Court issue a preliminary injunction against the NYPD's prosecution of Summons Court matters during the pendency of the instant matter.

### THIRD  CLAIM FOR RELIEF

**Excessive Force**
*Against Defendants Sgt. Casimir, PO Stosch, and PO Guarrera Pursuant to 42 U.S.C. § 1983 for Violations of Plaintiff's Rights Under the Fourteenth Amendment to the United States Constitution*

223.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

224.     Defendants' multiple uses of excessive force against Plaintiff were unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

225.     Defendants intentionally utilized force in a manner that was unreasonable under the circumstances, thereby causing significant injury to Plaintiff.

226.     As a result of Defendant's acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological

and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

## FOURTH CLAIM FOR RELIEF

**The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force, Regardless of Whether Such Force Is Used in Connection with a Search or Seizure** *Against Defendant City and NYPD Defendants Pursuant to* *New York City Administrative Code Title 8, Chapter 8 (§ 8-801, et seq.)*

227. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

228. As described above, the Defendants violated Plaintiff's right to be free from "unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure."

229. Pursuant to NYC Admin. Code Title 8, Chapter 8, §§ 8-801 through 8-809 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

230. The NYPD Defendants, including Defendant Stosch, Defendant Casimir, Defendant Guarrera, and all individually named NYPD Defendants, as employees of the Defendant City's police department, are "covered individuals" as defined in § 8-801 of this Chapter.

231. Pursuant to § 8-802, *et seq.*, NYPD Defendants and their employer, including Defendant City, are liable to Plaintiff for the conduct described herein.

232. Pursuant to § 8-803, Plaintiff's claims under common law or pursuant to any other law or rule are not limited or abrogated by his invocation of this statute.

233.    The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

234.    Pursuant to § 8-804, Defendants may not invoke the defense of qualified immunity to avoID liability for this cause of action.

235.    Pursuant to § 8-806, Plaintiff is entitled to compensatory and punitive damages, attorney's fees and costs, and an order restraining the Defendants from engaging in further violative conduct.

## FIFTH CLAIM FOR RELIEF

**Violations of Plaintiff's Due Process Rights**
*Against All Defendants Pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendments to the United States Constitution*

236.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

237.    Defendants City, by Defendants Adams, Sewell, Caban, Maddrey, Chell, and other policymakers for Defendant City, designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in subjecting Plaintiff to the violations of his Due Process rights described elsewhere herein.

238.    Defendants collectively and individually denied and/or frustrated Plaintiff's Due Process rights and deprived Plaintiff of liberty without due process of law by imposing punishment upon Plaintiff and by engaging in the violations complained of herein.

239.    As a result of Defendants' acts and omissions, Defendants deprived Plaintiff of his federal, state, and/or other legal rights; caused Plaintiff bodily injury, pain, suffering, psychological and/or emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and/or otherwise damaged and injured Plaintiff.

240. The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability**
*Against Defendant City Pursuant to 42 U.S.C. § 1983 and*
*Monell v. Department of Social Services (436 U.S. 658 [1978]) for Defendants'*
*Violations of Plaintiffs' Rights Under the First, Fourth, Fifth, Sixth, and Fourteenth*
*Amendments to the United States Constitution*

241. Plaintiff hereby incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

242. Defendant City, through its policymakers including Defendant Adams, Defendant Sewell, and Defendant Caban, were responsible for implementing and enforcing policies and procedures on behalf of the Defendant City.

243. The facts pleaded above describe the policies, practices, and customs Defendants subjected the Plaintiff to, including, but not limited to:

a. Permitting NYPD officers to prosecute Summons Court matters;

b. Subjecting civilians to excessive uses of force;

c. Arresting individuals accused of charges subject to mandatory appearance tickets in lieu of custodial arrest in violation of CPL § 150.20(1); and

d. Engaging in impermissible searches and seizures during street encounters, including in violation of the Court's directives in *Floyd, et al. v. City of New York*, 08-CV-1034 (AT), *Ligon, et al. v. City of New York, et al.*, 12-CV-2274 (AT), and *Davis, et al. v. City of New York, et al.*, 10-CV-0699 (AT). Plaintiff incorporates these matters by reference.

244.     This conduct has been the subject of numerous lawsuits and constituted, at least in part, the basis for various investigations and reports, including by the appointed Federal Monitor for the NYPD in *Floyd*, *Ligon*, and *Davis*.

245.     All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to:

    a.   Formal policies, rules, and procedures of Defendant City;

    b.   Actions and decisions by Defendant City's policymaking agents including, but not limited to, Defendants Adams, Caban, Maddrey, and Chell;

    c.   Customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute *de facto* policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City and by Defendants Adams, Caban, Maddrey, Chell, and other policymaking officials;

    d.   Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the County's failures, and the failures of the County's policymaking agents, to train, supervise, and discipline NYPD Members, despite full knowledge of the members' wrongful acts, as described herein.

## SEVENTH CLAIM FOR RELIEF

### First Amendment Retaliation
*Against NYPD Defendants Pursuant to 42 U.S.C. § 1983 for Defendants' Violations of Plaintiff's Rights Under the First and Fourteenth Amendments to the United States Constitution*

246.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

247.    Defendants imposed restrictions on such protected speech and/or conduct that violated Plaintiff's First Amendment rights, including, but not limited to, in unlawfully seizing and searching Plaintiff, in subjecting Plaintiff to excessive force, in selectively enforcing laws and regulations against Plaintiff, in subjecting Plaintiff to Defendants' harmful policies, and in otherwise violating Plaintiff's rights and engaging in the acts and omissions complained of herein.

248.    Defendants further engaged in retaliation against Plaintiff for engaging in speech and/or conduct protected by the First Amendment, including, *inter alia*, his conduct in:

a.  Lawfully recording Defendants;

b.  Lawfully inquiring as to the cause of his detention;

c.  Associating with individuals who lawfully recorded and/or lawfully questioned Defendants;

d.  Residing and associating with individuals in Brownsville, Brooklyn;

e.  Lodging report(s) with City agencies and/or participating in investigatory processes, including with the CCRB, regarding Defendants' conduct;

f.  Speaking to member(s) of the media, including with the *New York Daily News*, regarding his assault for reporting on NYPD brutality in Brownsville, Brooklyn and/or summons court proceedings;

g.  Complaining to the court(s) regarding his abuse at the hands of Defendants and proceeding to trial to challenge the lawfulness of his arrest.

249.    Defendants engaged in the acts and omissions complained of herein in retaliation for Plaintiff's protected speech and/or conduct.

250.    Defendants engaged in the acts and omissions complained of herein in order to prevent Plaintiff from continuing to engage in such protected speech and/or conduct.

251.    Defendants engaged in the acts and omissions complained of herein in order to prevent and/or discourage Plaintiff from engaging in similar protected conduct in the future.

252.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who implemented them subjected Plaintiff to violations of his First Amendment rights.

253.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment-based claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—with malice.

254.    Upon information and belief, Defendants engaged in the acts and omissions complained of herein with respect to Plaintiff's First Amendment retaliation claims—including the related municipal liability claims involving the adoption of policies, practices, and/or customs and/or related failures to train, supervise, and/or discipline—in response to the perceived viewpoint and/or message expressed by Plaintiff.

255.    Upon information and belief, Defendants did not subject other others similarly situated to Plaintiff in terms of their conduct and/or its potential public ramifications to the conduct, policies, practices, and/or customs complained of herein.

256.    Plaintiff suffered actual chill, including in that Plaintiff was prevented and/or deterred from or impeded in participating in protected conduct on the date of and after the incident, including his right to be lawfully present in public spaces and/or to associate with neighbors and members of his community; and/or suffered adverse effects on his protected speech and/or conduct; and/or otherwise suffered some concrete harm(s).

257.    Additionally, as discussed elsewhere herein, Defendant City designed and/or implemented policies and practices pursuant to which those Defendants who ordered, effected, and otherwise participated in detaining and assaulting Plaintiff subjected Plaintiff to the violations of their First Amendment rights described elsewhere herein.

258.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### EIGHTH CLAIM FOR RELIEF

**Failure to Train and/or Supervise**
***Against Defendants City, Adams, Sewell, Caban, Maddrey, Chell, and Casimir Pursuant to 42 U.S.C. § 1983 and* Monell v. Department of Social Services*, 436 U.S. 658 (1978)***

259.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

260.    Defendant City and its policymaker Defendants Adams, Sewell, Caban, Maddrey, Chell, and Casimir failed to train and supervise the Defendant NYPD members.

261.    All individual Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Mr. Morales's injuries.

262.    Defendants knew or should have known that Defendant NYPD Members were likely to violate the constitutional rights of individuals in their custody.

263.    Defendants know that NYPD Members are certain to regularly encounter circumstances described herein, including the stop and search of a civilian during a street stop, through the course of their employment.

264.    Defendants knew that there is a history of wrongful conduct in these scenarios by NYPD Members.

265.     Defendants further knew that training and/or supervision could ameliorate the potential harms of constitutional violations in these scenarios, including civil rights violations and physical and emotional injuries.

266.     Nevertheless, Defendants failed to train its agents and/or employees regarding their conduct during the scenarios described herein and further failed to supervise its agents and/or employees when engaged in high-risk contact.

267.     By failing to train and supervise Defendant NYPD Members, these Defendants exhibited a conscious disregard and/or deliberate indifference for the risks posed by NYPD members' conduct absent adequate training and supervision.

## NINTH CLAIM FOR RELIEF

### Negligent Screening, Hiring, and Retention
*Against Defendants City, Adams, Sewell, Caban, Maddrey, and Chell Pursuant to 42 U.S.C. § 1983 and* Monell v. Department of Social Services*, 436 U.S. 658 (1978)*

268.     Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

269.     All Defendants were employees and/or agents of Defendant City and were acting within the scope of their employment at the time of the conduct giving rise to Plaintiff's injuries.

270.     Defendant City and its policymaker officers, including Defendants Adams, Caban, Maddrey, and Chell, knew that the individual Defendants had a propensity for the conduct giving rise to Plaintiff's injuries.

271.     Defendants failed to adequately screen, hire, or retain employees in consideration of such employees' recognizable propensity for harm.

272.     Plaintiff was injured as a result of Defendants' conduct.

## TENTH CLAIM FOR RELIEF

### Breach of Duty to Protect
***Against All Defendants Pursuant to 42 U.S.C. § 1983***

273.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

274.    The Defendant City, by its agents, had a special duty to Plaintiff and possessed sufficient knowledge that inaction would lead to the harms suffered by Plaintiff.

275.    Defendants witnessed and/or knew of the harmful conduct of fellow Defendants and merely observed and/or unreasonably ignored such conduct against Plaintiff.

276.    Defendant City and its employees and/or agents breached the existing duty to protect Plaintiff, and such inaction enabled and/or facilitated and/or exacerbated the harms caused by Defendants' conduct and suffered by Plaintiff.

## ELEVENTH CLAIM FOR RELIEF

### Conspiracy
***Against Defendants Stosch, Guarrera, and Casimir Pursuant to 42 U.S.C. § 1985(3)***

277.    Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

278.    Through the conduct described and complained of herein, Defendants conspired to deprive Plaintiff of the equal protection of the laws, or of equal privileges and immunities under the laws.

279.    Defendants acted in furtherance of this conspiracy against Plaintiff, and as a result of this conduct, Plaintiff was injured in his person and property and deprived of his constitutional and civil rights.

## TWELFTH CLAIM FOR RELIEF

**Failure to Prevent Civil Rights Violations**
***Against All Defendants Pursuant to 42 U.S.C. § 1986***

280. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

281. The NYPD Defendants had knowledge that the wrongs conspired to be done against Plaintiff in violation of 42 U.S.C. § 1985 were to be committed and had the power to prevent and/or aID in preventing the commission of this conduct.

282. Defendants neglected and/or refused to prevent the commission of this conduct and Plaintiff sustained harm and/or the exacerbation of harm and the deprivation of his rights as a result of this failure.

283. Defendants are liable for all damages caused by the conspiratorial conduct they failed to prevent despite possessing the power to do so.

## THIRTEENTH CLAIM FOR RELIEF

**Deliberate Indifference to Safety**
***Against All Defendants Pursuant to 42 USC § 1983 and the Fourteenth Amendment to the United States Constitution***

284. Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

285. Defendants were aware of the risks posed to Plaintiff while he was in the presence of Defendants and was otherwise subjected to Defendants' conduct described herein.

286. Defendants failed to protect Plaintiff or to otherwise reasonably provide for Plaintiff's safety, including through the conduct described above.

287. Defendants failed to take reasonable measures to abate the harms posed to Plaintiff, and Plaintiff was injured as a result.

288.    Through Defendants' conduct, including actions, inactions, and policies, Defendants demonstrated a deliberate disregard for Plaintiff's safety.

289.    As a result of Defendants' deliberate indifference to Plaintiff's safety, Plaintiff experienced the injuries complained of herein.

## FOURTEENTH CLAIM FOR RELIEF

### Malicious Prosecution
*Against All Defendants Pursuant to 42 USC § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution*

290.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

291.    Defendants, including Defendant Sgt. Casimir and Defendant PO Stosch, initiated and/or or continued the criminal proceeding against Plaintiff without probable cause to do so.

292.    The matter terminated in Plaintiff's favor with a dismissal on or about June 13, 2023.

293.    Through the conduct described above, Plaintiff has established that Defendants undertook the prosecution against him with actual malice.

294.    As a result of the conduct described herein, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTEENTH CLAIM FOR RELIEF

### Interference and/or Retaliation Against the Right to Record Police Activities
*Against All Defendants Pursuant to NYC Admin. Code § 14-189*

295.    Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

296.    As described above, the Defendants violated Plaintiff's right to be free from interference when lawfully recording police activity.

297.    Pursuant to NYC Admin. Code Title 14, Chapter 14, §§ 14-189 of the New York City Civil Rights Law, Plaintiff maintains a private right of action against the individual NYPD Defendants and their employer, Defendant City, for this conduct.

298.    The NYPD Defendants, including Defendant Stosch, Defendant Casimir, Defendant Guarrera, and all individually named NYPD Defendants, as employees of the Defendant City's police department, are police officers and were engaging in police activities as defined in this Chapter.

299.    Plaintiff was visibly and lawfully recording police activities, as were other individuals present to witness Plaintiff's arrest and assault.

300.    No individuals were interfering with lawful police conduct while recording this police activity.

301.    Defendants interfered with their ability to record and/or retaliated against them for recording by utilizing excessive force, obstructing cameras intentionally, blocking eyewitnesses' views of Plaintiff and of Defendants' misconduct, deploying chemical agents at recording individuals, and otherwise interfering with this right as defined in the instant Chapter.

302.    Under § 14-189, Plaintiff may initiate a private right of action for Defendants' conduct, and is entitled to compensatory and punitive damages, attorney's fees and costs, and declaratory and/or injunctive relief.

303.    The remedies provided by this chapter are in addition to any other remedies that may be provided for under common law or pursuant to any other law or rule.

## SIXTEENTH CLAIM FOR RELIEF

### Violations of Plaintiff's Right to a Fair Trial
*Against All Defendants Pursuant to 42 USC § 1983 and the Due Process Clause of the United States Constitution*

304.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

305.     Defendant NYPD members fabricated and forwarded evidence to a prosecutor that would be likely to influence a jury's decision, were that evidence presented to the jury.

## SEVENTEENTH CLAIM FOR RELIEF

### Claims Under New York State Law

306.     Plaintiff incorporates by reference the allegations set forth in all preceding and following paragraphs as if fully set forth herein.

307.     As a result of the conduct described herein, Plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### I.     *Respondeat Superior*

308.     The conduct of the police officials alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, cloaked with and/or invoking state power and/or authority.

309.     As a result, Defendant City is liable to the Plaintiffs pursuant to the state common law doctrine of *respondeat superior*.

48

## II.      Relief Under CVP Art. 78

310.      Under New York Civil Procedure Laws and Rules, Art. 78 (CVP Art. 78) § 7803(1-3), Plaintiff may commence an action seeking declaratory judgment and injunctive relief if the court determines a New York State body or officer:

      a.      Failed to perform a duty enjoined upon it by law; or

      b.      Proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

      c.      Made a determination in violation of lawful procedure that was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed.

311.      Through the conduct described herein, the Brooklyn DA has failed to perform a duty enjoined upon it by law; the NYPD, by its chief officers, including Defendants Adams, Caban, and Maddrey, proceeded, and is proceeding, in excess of its jurisdiction; and both have made determinations in violation of lawful procedures amounting to abuse of discretion.

312.      This Court has previously exercised jurisdiction over CVP Art. 78 proceedings where they are initiated as part of a hybrid matter alleging closely related Federal civil rights violations pursuant to 42 USC § 1983. *See, e.g., Garofalo v City of New York* (1:22-cv-07620) (NRM) (VMS) (2023).

313.      Based on Defendants' conduct and policies described herein, Plaintiff seeks injunctive and declaratory relief pursuant to Article 78.

## III.      Violations of the New York State Constitution

314.      Defendants, acting under color of law, violated Plaintiff's rights pursuant to Article I §§ 5, 11, and 12 of the New York State Constitution.

315.    A damages remedy here is necessary to effectuate the purposes of Article I, §§ 5, 11, and 12 of the New York State Constitution, and appropriate to ensure full realizations of Plaintiff's rights under those sections.

## IV.    False Arrest

316.    By the actions described above, the police officials described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so.

317.    Plaintiff was conscious of the confinement and it was without his consent.

318.    Defendants levied false allegations against Mr. Morales to wrongfully seize, detain, and arrest him.

319.    Not only were Defendants' allegations false, but the charges themselves did not permit Plaintiff's custodial arrest.

320.    Even if Defendants were to claim they possessed cause to believe that Mr. Morales "littered," the NYPD Defendants did not have the lawful authority to arrest Plaintiff under the New York State Criminal Procedure Law (C.P.L.) § 150.20(1)(a). Neither the alleged infraction of "littering," a non-criminal local law violation, nor Defendants' hastily-revised misdemeanor allegation of publicly possessing a visible knife under Admin. Code § 10-133(c), are arrest-eligible charges.

321.    The C.P.L. mandates that summonses are issued for offenses other than violent felonies, sexual offense allegations, charges that may result in the issuance of an order of protection, and certain other charges specified under C.P.L. § 150.20(1), *et seq*.

322.    Furthermore, Mr. Morales did not personally qualify for any of the circumstantial exceptions to the C.P.L. forbidding custodial arrest for minor offenses. Mr. Morales did not have

any active warrants, he provided his true legal identity and even presented his valid identification upon Defendants' request, he was not on probation or parole, and he did not present a danger to himself or others.

323.    Defendants did not have the lawful authority to arrest Plaintiff and/or search Plaintiff and his personal belongings, having accused him only of a non-criminal violation.

324.    All charges against Mr. Morales terminated in his favor when the Brooklyn DA declined to prosecute them, and again when they were dismissed in Summons Court.

### V.    Fabrication of Evidence

325.    Defendants were investigating officials in this matter.

326.    Defendants knowingly fabricated evidence likely to influence a finder of fact and forwarded this information to prosecutors.

327.    As a result of this fabrication, Plaintiff suffered deprivations of his life, liberty, and/or property and suffered significant injuries.

328.    These deprivations include: Plaintiff's detention in the NYPD's custody for approximately eight (8) hours and Plaintiff's mandated return to Court on approximately three (3) occasions during the pendency of the case against him until it was terminated in his favor.

### VI.    False Imprisonment and Unreasonable Detention

329.    By the actions described above, the Defendants described above did falsely detain Plaintiff within the meaning of New York common law without reasonable or probable cause, illegally and without a written warrant, and without any right or authority to do so. Plaintiff was at all times conscious of the confinement, and it was undertaken without his consent.

### VII.    Denial and/or Delay of Medical Care
**Pursuant to <u>New York State Civil Rights Law Article 3 § 28</u> (<u>N.Y. Civ. § 28</u>) as well as New York State Common and Constitutional Law**

330.    At the time of the incident giving rise to the instant Complaint, Plaintiff was in the custody of Defendants, who are each a "police officer, peace officer or other law enforcement representative or entity" within the meaning of the New York State Civil Rights Law.

331.    As such, Defendants had a duty to provide assistance and treatment for Plaintiff's medical needs.

332.    Defendants abdicated their duties under this statute and failed to provide and/or delayed in providing medical care to Plaintiff.

333.    Such denial and/or delay was unreasonable and caused delay in Plaintiff's treatment for a serious physical and/or emotional injury.

334.    This failure resulted in serious injury and/or the exacerbation of Plaintiff's injuries for which Defendants are liable.

## VIII.   Assault and Battery

335.    Defendants committed assault within the meaning of New York common law against Plaintiffs by intentionally placing Plaintiff in fear of imminent harmful or offensive contact.

336.    The force utilized by Defendants was unreasonable and intentional, and this force caused significant injury to Plaintiff.

337.    Defendants committed battery within the meaning of New York common law against Plaintiff by intentionally physically contacting Plaintiff without Plaintiff's consent.

338.    Defendants did thereby inflict assault and battery upon the Plaintiff.

## IX.   Excessive Force

339.   Defendants' use of excessive force against Plaintiff was unjustified, objectively unreasonable, and clearly intended as punishment when taking into consideration the facts and circumstances that confronted Defendants.

340.   This conduct caused Plaintiff physical injury and emotional anguish, and Defendants are liable to Plaintiff for this conduct and its resulting injuries.

## X.   Negligence

341.   Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein. Defendants' negligence in fulfilling their duty to Plaintiff resulted in Plaintiff's injuries and they are liable for this conduct and its resulting injuries.

## XI.   Intentional Infliction of Emotional Distress

342.   By the actions described above, Defendants engaged in extreme and outrageous conduct.

343.   Defendants intentionally caused Defendant's severe emotional distress and/or acted with a disregard for the substantial probability of causing the same.

344.   Plaintiff suffered severe emotional distress as the direct result of Defendants' conduct, which was outside the bounds of decency.

## XII.   Conversion

345.   Defendants permanently deprived Plaintiff of his property, including United States currency.

346.   Defendants refused to provide food to Mr. Morales while he wrongfully remained in Defendants' custody, and when Defendants insisted that Mr. Morales would only be provided food if he provided currency to Defendants, including Defendant Stosch.

347.    Defendants had no right to this property, had an obligation to provide Plaintiff with food, and wrongly permanently deprived Mr. Morales of his property.

### XIII.   Negligent Infliction of Emotional Distress

348.    Defendants owed Plaintiff a duty of care and breached this duty of care through the conduct described herein, directly causing the emotional harms, including post-traumatic stress, insomnia, depression, and ongoing anxiety and fear.

### XIV.   Negligent Training, Retention, Hiring and Supervision

349.    Upon information and belief, Defendant City supervised and trained the police officials described above and did so in a negligent manner resulting in the harms described.

350.    At all times relevant herein, Defendants were employed by, and acting in the scope of their employment with, Defendant City.

351.    Defendant City should have known that Defendant NYPD Members had a propensity for the conduct causing Plaintiff's injuries.

352.    The unlawful conduct of the Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### <u>DEMAND FOR A JURY TRIAL</u>

Plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

### <u>CONCLUSION AND DEMAND FOR JUDGMENT</u>

WHEREFORE, Plaintiff respectfully seeks relief from this Court and demands judgment against the individual Defendants and the City of New York in the following forms:

i.    A declaration that the prosecution of Kings County matters by the NYPD is an impermissible *ultra vires* exercise of power;

ii.   Injunctive relief prohibiting NYPD employees from acting as prosecutors in summons matters originating in Kings County, and other New York City summons prosecutions;

iii.     Actual and punitive damages against the individual Defendants in an amount to be determined at trial;

iv.     Actual damages in an amount to be determined at trial against Defendant City;

ii.      Statutory attorney's fees, disbursements, punitive damages, actual damages, and costs of the action pursuant to, *inter alia,* <u>42 U.S.C. §1988</u>, <u>N.Y. Civ. § 28</u>, <u>NYC Admin. Code § 8-802</u>, <u>NYC Admin. Code § 14-189</u>, and New York common law; and

iii.     Such other relief as the Court deems just and proper.


Dated:        Brooklyn, New York
              March 13, 2024

                                        **KAISHIAN & MORTAZAVI LLC**
                                        By:
                                        Maryanne K. Kaishian
                                        55 Washington Street, Ste. 508
                                        Brooklyn, New York 11201
                                        Attorneys for Manuel J. Morales
                                        T: (347) 662-2421
                                        E: mk@kaishianlaw.com

## **PLAINTIFF VERIFICATION**

I, MANUEL J. MORALES, affirm the following to be true under the penalties of perjury:

1.      I am over 18 years of age and am a resident of Kings County, New York.

2.      I am the Plaintiff in the above action, *Morales v City of New York, et al.*

3.      I have read the attached Verified Complaint and am familiar with its contents and underlying events.

4.      The facts alleged in this Verified Complaint are true to my knowledge. As to those matters therein which are alleged upon information and belief, I believe them to be true.

Dated:    _____03/13/2024_____                    Signed: *Manuel J. Morales*
                                                                        _____

                                                                        Manuel J. Morales

---

STATE OF NEW YORK              )

                                                   SS.

COUNTY OF    **Kings**              )

On the    13    day of    March    in the year 2024 before me, the undersigned notary public, personally appeared    Manuel J. Morales   , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notarized online using audio-video communication

> Maryanne K Kaishian
> Online Notary Public
> State of New York
> Kings County
> Commission #: 02KA0015799
> Commission Expires: 11/07/2027

_____
Notary Public