UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MANUEL J. MORALES,

               Plaintiff,

      v.

THE CITY OF NEW YORK, ET AL.,

             Defendants.

**MEMORANDUM & ORDER**
24-CV-1866 (HG)

**HECTOR GONZALEZ**, United States District Judge:

After Plaintiff Manuel Morales was twice arrested on allegedly unlawful grounds, he sued the City of New York; Mayor Adams, former New York Police Department Commissioners Sewell and Caban, former NYPD Chief Maddrey, and current NYPD Chief Chell (the "Policymaker Defendants"); Brooklyn District Attorney Gonzalez; NYPD Sergeant Casimir and NYPD Officers Stosch, Guarrera, and Moye; and finally, NYPD Officers Steiger, Pierrilus, Stahurski, Felsberg, and Logatto (the "Bystander Defendants"). *See* ECF No. 94 (Amended Complaint).[1]  Plaintiff alleges several constitutional violations under 42 U.S.C § 1983 and related state law claims.  Certain Defendants filed a partial motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), *see* ECF No. 102 (Motion to Dismiss), which the Court GRANTS in part and DENIES in part.

## BACKGROUND

    *A.  April 22, 2023, Arrest*

On April 22, 2023, Defendants Stosch, Guarrera, and Casimir approached Plaintiff on a public sidewalk in Brownsville, Brooklyn, where Plaintiff's family resides, and accused him of

---

[1]    Plaintiff initially sued 39 defendants, *see* ECF No. 1, but he narrowed his amended complaint to assert claims against only the above-mentioned defendants, *see* ECF No. 94.

"litter[ing] a box of Mike and Ikes."  ECF No. 94 ¶¶ 1, 3, 90, 125–26, 133–35.[2]  Plaintiff, who

had been conducting himself "in an entirely lawful manner," began to record the interaction on

his cell phone.  *Id.* ¶¶ 128, 131.  After a brief back-and-forth between Plaintiff and Defendants,

in which Plaintiff questioned, "I littered?", Defendants forced Plaintiff against a wall and threw

him onto the sidewalk face first.  *Id.* ¶¶ 132–36, 142.  Once Plaintiff was on the ground, Officer

Stosch put his body weight on Plaintiff's back and shoved Plaintiff's face against a metal pipe

protruding from the wall.  *Id.* ¶ 143.  Plaintiff repeatedly shouted that "he could not breathe," and

Officer Stosch responded by wrapping handcuffs around his own fist, raising his fist in front of

Plaintiff's face, and threatening, "If you don't stop moving I will punch you in the f——g face."

*Id.* ¶¶ 144–45.

 The commotion drew a small crowd of civilians.  *Id.* ¶ 147.  Defendants Steiger,

Pierrilus, and Stahurski then arrived at the scene, apparently with:  "ample time to observe their

colleagues' unlawful conduct against Plaintiff"; an "aware[ness] of the unlawful nature of this

conduct"; and "the means and opportunity to intervene in this conduct."  *Id.* ¶ 149.  However,

they "declined to do so."  *Id.*  Civilians began recording the arrest on their cell phones and

reiterated to Defendants:  "He told you he can't breathe.  He cannot breathe."  *Id.* ¶ 150.  In

response, Sergeant Casimir and other Defendants pushed several civilians and deployed a

chemical spray into the crowd and at Plaintiff, further restricting Plaintiff's ability to breathe.  *Id.*

¶¶ 151–52.  Meanwhile, other officers—Defendants Felsberg and Logatto—"stood above

Plaintiff while he remained pinned to the sidewalk by Defendants Stosch and Moye, observing

their colleagues' assault against [Plaintiff] but declining to intervene."  *Id.* ¶ 155.  Instead,

---

[2] The Court "recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts."  *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

Defendants Felsberg and Logatto "intentionally obstruct[ed] the view of bystanders who attempted to record the assault against Plaintiff to assist in and/or facilitate this unlawful conduct." *Id.*

Next, Officer Stosch tightly handcuffed Plaintiff while Officer Moye twisted Plaintiff's left arm behind his back. *Id.* ¶¶ 153–54. Officers Stosch and Moye then forced Plaintiff into a standing position by yanking his handcuffed arms, and Officer Stosch pushed him into a police car. *Id.* ¶¶ 156–57. Plaintiff was transported to the 73rd Precinct, where he remained in custody for approximately eight hours. *Id.* ¶¶ 158, 160. During that time, Plaintiff "needed urgent medical care and expressed that he wished to go to a hospital," but "Defendants denied and/or delayed Plaintiff's medical care, causing additional suffering and exacerbating his serious injuries." *Id.* ¶ 161. Around 2:15 a.m. on April 23, 2023, Plaintiff was released with a summons instructing him to appear at New York County Summons Court ("Summons Court") on May 11, 2023.[3] *Id.* ¶ 163.

### B. Summons Court Proceedings

In connection with Plaintiff's arrest, Defendants Casimir and Stosch allegedly presented false information about Plaintiff to the Kings County District Attorney's Office (the "District Attorney's Office"). *Id.* ¶ 164. For example, "Defendants falsely alleged that [Plaintiff] had littered 'a box of Mike and Ikes,' a non-criminal violation of local law." *Id.* ¶ 165. And Defendants "falsely alleged that [Plaintiff] had engaged in disorderly conduct and that he obstructed governmental administration and resisted arrest." *Id.* ¶ 166. Despite these

---

[3]    Plaintiff alleges that "[m]atters arising in Kings County," which is in Brooklyn, are routinely "prosecuted by [the] NYPD in New York County Summons Court," which is in Manhattan. ECF No. 94 ¶ 48. Plaintiff further alleges that "[t]he Brooklyn DA has chosen not to prosecute these summons matters in Kings County—or at all—and is aware that the NYPD is prosecuting Kings County matters in New York County Summons Court." *Id.* ¶ 49.

allegations, the District Attorney's Office declined to prosecute Plaintiff. *Id.* ¶ 167. Seemingly undeterred, Defendants issued Plaintiff a new summons accusing him of violating a city law banning the open carrying of knives in public places, *see* Admin. Code § 10-133(c), even though (1) body-worn camera footage showed no knife on Plaintiff's person, and (2) Plaintiff's arrest report affirmatively states that he neither used nor possessed any weapons, *id.* ¶¶ 171–76.

At Plaintiff's initial appearance at Summons Court on May 11, 2023, he was offered an Adjournment in Contemplation of Dismissal, but he chose to proceed to trial. *Id.* ¶¶ 169, 180–81. Because there was no attorney present to prosecute the case, the matter was adjourned to May 24, 2023. *Id.* ¶¶ 182–83. On May 24, Plaintiff returned to Summons Court and was met by Officer Stosch, who purported to "represent[] 'the People of the State of New York.'" *Id.* ¶ 185. Despite his declaration of his role as prosecutor, Officer Stosch claimed not to have access to mandatory discovery items. *Id.* ¶¶ 187–88. A discovery dispute ensued and led to a second adjournment, this time to June 13, 2023. *Id.* ¶¶ 193–94.

Come June 13, "rather than informing the court, and [Plaintiff], that the matter would not be pursued further, [Officer Stosch] took advantage of a Summons Court policy affording NYPD members a several-hour[s]-long grace period to appear in court before being deemed absent." *Id.* ¶ 196. As a result, Plaintiff was forced to wait for hours until the court dismissed the case based on Officer Stosch's failure to appear. *Id.* ¶¶ 197–98. According to Plaintiff, despite the dismissal, "the threat [the Summons Court] policies pose to [Plaintiff] is ongoing, and exceeds well beyond mere speculation of further harm." *Id.* ¶ 199; *see also id.* ¶ 15 ("[T]he threats posed to Plaintiff by Defendants, including through the Summons Court system, are ongoing.").

Plaintiff further asserts that his experience at Summons Court was not unique, as the District Attorney's Office and the NYPD allegedly maintain a "joint policy of permitting the

4

prosecution of Summons Court matters originating in Kings County by the NYPD." *Id.* ¶ 13. More generally, "[t]he Summons Court process in New York City permits cases not brought for prosecution by the five boroughs' elected district attorneys to be prosecuted directly by members of the NYPD and/or the NYPD's Legal Bureau."[4] *Id.* ¶ 46.  Plaintiff also explains that the NYPD "disparately targets Black and Latin New Yorkers such as Plaintiff for prosecution in summons matters." *Id.* ¶ 71.

Last, Plaintiff alleges that the Policymaker Defendants "are actively creating, implementing, enforcing, and condoning policies and practices designed to circumvent New Yorkers' rights against unlawful searches and seizures," and that those Defendants "have all publicly supported increasing street stops, or 'stop-and-frisk' policies, and have publicly opposed transparency and recording requirements for these same encounters." *Id.* ¶¶ 78–79.

### C.  January 30, 2024, Arrest

Plaintiff's April 22, 2023, arrest was not his last run-in with Officer Stosch.  On January 30, 2024, Plaintiff was "seized by Defendants, including Defendant Stosch and another NYPD member without cause or justification." *Id.* ¶ 202.  During this encounter, Officer Stosch loudly called Plaintiff "'a rat,'" presumably referring to Plaintiff's "decision to report Defendants for their abuses against him" and signaling "a warning against future participation in these processes." *Id.* ¶¶ 203, 205.  Officer Stosch proceeded to "unlawfully detain[] [Plaintiff] and search[] his person and belongings without his consent or cause before releasing him without charges." *Id.* ¶ 204.

---

[4]    As an example, Plaintiff cites a Memorandum of Understanding ("MOU") between the Manhattan District Attorney's Office and the NYPD, which was rescinded in 2018.  *See* ECF No. 94 ¶¶ 47, 121.

After Plaintiff's arrests, he sustained myriad physical injuries, including a loss of mobility in his right shoulder and lower back. *Id.* ¶¶ 207, 210. He suffered lost wages, incurred medical costs, and endured psychological damage, among other injuries. *Id.* ¶¶ 209, 211. As a result, Plaintiff sued Defendants, requesting: (1) injunctive relief prohibiting the prosecution of Kings County Summons Court matters by the NYPD; (2) a declaratory judgment declaring the prosecution of Summons Court matters by the NYPD an *ultra vires* act under New York law; and (3) damages arising from Defendants' alleged violations of federal and state law. Certain Defendants then filed the instant motion, which is now ripe for adjudication.

## **LEGAL STANDARD**

### *A. Federal Rule of Civil Procedure 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).[5] In considering a Rule 12(b)(1) motion, the court "must accept as true all material factual allegations in the complaint." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). Rather, "[t]he party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists." *Branch of Citibank, N.A. v. De Nevares*, 74 F.4th 8, 15 (2d Cir. 2023). If a party lacks standing to bring a claim, then the Court lacks subject-matter jurisdiction over that claim. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

---

[5]    Unless otherwise indicated, when quoting cases, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.

### B.  Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally."  *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-cv-1176, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).  However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a motion to dismiss.  *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Injunctive Relief

First, Plaintiff seeks injunctive relief "prohibiting the prosecution of Kings County Summons Court matters by the NYPD."  ECF No. 94 at 33.  Defendants argue that Plaintiff lacks standing to request injunctive relief, and therefore, the Court lacks subject-matter jurisdiction to consider that request.  ECF No. 105 at 18–23.  The Court agrees.

To establish standing, a plaintiff must make three familiar showings:  "an injury in fact"; "a causal connection between the injury and the conduct complained of"; and a likelihood "that the injury will be redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Here, because Plaintiff seeks injunctive relief, a forward-looking remedy, he

"cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he . . . will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). Although past incidents can be "evidence bearing on whether there is a real and immediate threat of repeated injury," past harm alone is insufficient to establish a likelihood of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

In the context of claims brought under § 1983, the Supreme Court's decision in "*City of Los Angeles v. Lyons* occupies much of this territory." *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004). There, the Court held that the plaintiff, who was placed in a chokehold by police during a traffic stop, lacked standing to seek injunctive relief barring officers from indiscriminately applying chokeholds. *Lyons*, 461 U.S. at 97–98, 105. The Court reasoned that the plaintiff's past injury served as a predicate for compensatory damages but did "nothing to establish a real and immediate threat" that the plaintiff would "again be wronged in a similar way." *Id.* at 105, 111. Applying the logic in *Lyons*, the Second Circuit held that a plaintiff who was strip-searched lacked standing to seek injunctive relief precluding the police from conducting strip searches on a "blanket" basis, as he failed to establish "the likelihood of a future encounter with [the police] likely to result in a subsequent unconstitutional strip search." *Shain*, 356 F.3d at 213, 215. "[E]ven if [the plaintiff] were arrested again," the notion that he would be arrested and detained in the same manner, resulting in the same injury, was "entirely conjectural." *Id.* at 215.

The same is true here. As in *Lyons* and *Shain*, there is no question that Plaintiff has sufficiently alleged a past injury related to his requested relief: he was prosecuted in Summons Court by the NYPD, the very practice that he seeks to enjoin. But also like in *Lyons* and *Shain*, Plaintiff's allegation of past injury "does nothing to establish a real and immediate threat" that

8

Plaintiff will "be wronged in a similar way," even if he is arrested again. *Lyons*, 461 U.S. at 105, 111; *see Shain*, 356 F.3d at 215. Indeed, Plaintiff alleges that he *was* arrested again—by the same officer, no less—but mentions no resulting prosecution by the NYPD in Summons Court. *See* ECF No. 94 at ¶¶ 201–06. Thus, even assuming Plaintiff's subsequent arrest demonstrates "that he is likely to encounter law enforcement in the future," it does not demonstrate "that he is likely to be harmed again in a similar way"—that is, through the NYPD's handling of his case in Summons Court. *Heggs v. City of New York*, No. 17-cv-3234, 2023 WL 9786044, at *13 (E.D.N.Y. Aug. 24, 2023), *report and recommendation adopted*, No. 17-cv-03234, 2024 WL 759439 (E.D.N.Y. Feb. 23, 2024). And Plaintiff's assertions that "the threat [the Summons Court] policies pose to [him] is ongoing, and exceeds well beyond mere speculation of further harm," ECF No. 94 ¶ 199, and that "the threats posed to Plaintiff by Defendants, including through the Summons Court system, are ongoing," *id.* ¶ 15, are too conclusory to confer standing, *see Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 76 (2d Cir. 2022) (standing may not be premised on conclusory allegations).

Because Plaintiff cannot establish a sufficient likelihood that he will again be prosecuted by the NYPD in Summons Court, he "is no more entitled to an injunction than any other citizen," and his claim for injunctive relief is dismissed without prejudice for lack of subject-matter jurisdiction. *Lyons*, 461 U.S. at 111.

## II.    Declaratory Relief

Similarly, Plaintiff requests a declaratory judgment "declaring the prosecution of Summons Court matters by the NYPD an *ultra vires* act under the New York State Constitution and New York law." ECF No. 94 at 32. The Court dismisses this claim for the same reasons it dismisses Plaintiff's claim for injunctive relief.

The Declaratory Judgment Act permits a federal court, "in a case of actual controversy within its jurisdiction, to declare the rights and other legal relations of any interested party seeking such declaration." *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 254 (E.D.N.Y. 2021) (citing 28 U.S.C. § 2201(a)).  Like injunctive relief, declaratory relief "is intended to operate prospectively," so when "only past acts are involved, declaratory relief is unavailable." *Id.* at 254–55; *see also Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014) ("[T]here is no basis for declaratory relief where only past acts are involved.").  "To establish standing to obtain prospective relief like [a] declaratory judgment, a plaintiff must show a likelihood that he will be injured in the future," *Mayorkas*, 530 F. Supp. 3d at 255, and "that the injury would be prevented by the equitable relief sought," *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).

For the reasons explained above, *see supra* Section I, Plaintiff has not established a likelihood that he will again be prosecuted by the NYPD in Summons Court, so he lacks standing to pursue declaratory relief, and that claim, too, is dismissed without prejudice for lack of subject-matter jurisdiction.

## III.    Claims Against the Policymaker Defendants

Next, Plaintiff brings claims against the Policymaker Defendants in their official and individual capacities.  *See* ECF No. 94 ¶¶ 19–21, 23–24, 329–35.  Those Defendants move to dismiss the claims against them in their official capacities on grounds that they are duplicative of Plaintiff's *Monell* claim against the City.  ECF No. 105 at 25–26.  The Court agrees and dismisses those claims as redundant.[6]

---

[6]    Plaintiff also sues District Attorney Gonzalez "in his official capacity for the sole purpose of obtaining injunctive relief, policy change, and declaratory judgment."  ECF No. 94 ¶ 22. Because the Court dismisses Plaintiff's claims for prospective relief, *see supra* Sections I–II, *infra* Section VII.A, any claims against Defendant Gonzalez necessarily fail.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). Thus, "[w]here the governmental entity can itself be held liable for damages as a result of its official policy, a suit naming the legislators in their official capacity is redundant." *In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 408–09 (S.D.N.Y. 2021). "Accordingly, courts in the Second Circuit routinely dismiss official capacity claims against municipal officials as duplicative of the claims against the municipality." *Id.* at 409 (dismissing claims against mayor, police commissioner, and NYPD Chief of Department, in their official capacities, as duplicative of municipal claims against the City). Because Plaintiff brings a *Monell* claim against the City, *see infra* Section IV, the Court dismisses Plaintiff's claims against the Policymaker Defendants in their official capacities as duplicative of the *Monell* claim. *See id.*; *see also Phillips v. Cnty. of Orange*, 894 F. Supp. 2d 345, 384 n.35 (S.D.N.Y. 2012) (collecting cases).

To the extent Plaintiff sues the Policymaker Defendants in their individual capacities for alleged constitutional violations, those claims are also dismissed.[7] The Second Circuit has made clear that in order to properly plead a § 1983 claim against a government official, "a plaintiff

---

[7]     The Court dismisses Plaintiff's claims against the Policymaker Defendants in their individual capacities *sua sponte*. "A district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard." *Wisoff v. City of Schenectady, N.Y.*, 568 F. App'x 28, 30 n.2 (2d Cir. 2014). Here, the Policymaker Defendants filed a pre-motion letter in which they argued, among other things, that Plaintiff "fail[ed] to plead sufficient personal involvement to maintain any claims against [them] in their individual capacities." ECF No. 66 at 2. Plaintiff, in turn, argued that his complaint was "rife with well-supported allegations" establishing the Policymaker Defendants' personal involvement in Plaintiff's alleged constitutional injuries. ECF No. 74 at 3. The Court then granted Plaintiff leave to amend the complaint, directing him to "address the issues raised in Defendants' pre-motion letter." December 19, 2024, Text Order. In Plaintiff's amended complaint, however, he purported to sue the Policymaker Defendants in their individual capacities, *see* ECF No. 94 ¶¶ 19–21, 23–24, but did not cure the deficiency. Therefore, *sua sponte* dismissal is appropriate.

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020). Here, Plaintiff claims that the Policymaker Defendants "are actively creating, implementing, enforcing, and condoning policies and practices designed to circumvent New Yorkers' rights against unlawful searches and seizures," and that those Defendants "have all publicly supported increasing street stops, or 'stop-and-frisk' policies, and have publicly opposed transparency and recording requirements for these same encounters." ECF No. 94 ¶¶ 78–79. But Plaintiff makes no specific allegations that the Policymaker Defendants were personally involved in any alleged violations of his constitutional rights. *See In re New York City Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d at 410–11 (dismissing claim against police commissioner in his individual capacity where plaintiffs only alleged that he made public comments about the NYPD's response to demonstrations but had no personal involvement). Plaintiff's claims against the Policymaker Defendants, in both their official and individual capacities, are therefore dismissed.

## IV.    *Monell* Claim

Plaintiff also advances a *Monell* claim under § 1983 against the City for failing to train its police officers, which allegedly resulted in unconstitutional acts against Plaintiff. Defendants urge the Court to dismiss this claim, asserting that Plaintiff fails to plead the requisite elements of a failure-to-train theory of municipal liability. Because Plaintiff does not satisfy the requirements of that theory, the Court dismisses his *Monell* claim.

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court extended § 1983 liability to municipal entities whose policies or customs have inflicted constitutional injuries. 436 U.S. at 694. To prove the existence of such a policy or custom, a

plaintiff must show either:  "(1) an official policy, endorsed by the municipality; (2) actions taken by officials or policymakers that caused the underlying constitutional violation; (3) a widespread and persistent practice so manifest as to imply the acquiescence of policymakers; or (4) a failure to train, supervise or discipline officers amounting to deliberate indifference to the rights of those citizens interacting with the officers."  *Fowler v. City of New York*, No. 13-cv-2372, 2019 WL 1368994, at *6 (E.D.N.Y. Mar. 26, 2019).  Here, Plaintiff brings his *Monell* claim under the fourth theory of municipal liability—failure to train.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To give rise to municipal liability, a city's failure to train "must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact."  *Id.*  "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Id.*  Moreover, to prevail on a failure-to-train theory, a plaintiff must demonstrate "a specific deficiency in the municipality's training program and establish that that deficiency is closely related to the ultimate injury such that it actually caused the constitutional deprivation."  *Singh v. Sachem Cent. Sch. Dist.*, No. 20-cv-00146, 2025 WL 1616622, at *27 (E.D.N.Y. June 6, 2025).

Here, far from articulating "a specific deficiency in the municipality's training program," much less one that "actually caused the constitutional deprivation" and amounted to deliberate indifference, Plaintiff puts forth purely conclusory assertions.  *Id.*  For example, Plaintiff alleges that the City "fail[ed] to train and supervise" its police officers with respect to certain practices, such as Summons Court prosecutions and "stop-and-frisks," and that failure amounted to "conscious disregard and/or deliberate indifference [to] the risks posed by NYPD members'

conduct absent adequate training and supervision." *Id.* ¶¶ 250–51. This allegation, which simply mirrors the elements of a failure-to-train theory, does not suffice. *See Singh*, 2025 WL 1616622, at *29 ("With respect to the failure-to-train theory of liability, Plaintiffs' allegation that the municipality failed to train its personnel with respect to the Fourth Amendment rights of students in general, and more particularly when it came to protected information in cellular telephones, is entirely conclusory."). Because Plaintiff does not adequately plead his failure-to-train theory, the Court dismisses his *Monell* claim against the City.[8]

## V.    Claims Against the Bystander Defendants

The Court now turns to Plaintiff's claims against the Bystander Defendants for failure to intervene under § 1983. The Bystander Defendants argue that Plaintiff fails to plead their personal involvement in any of the constitutional violations alleged, which forecloses the § 1983 claim against them. The Court agrees that Plaintiff does not plausibly allege that Defendants Steiger, Pierrilus, and Stahurski failed to intervene, but finds that Plaintiff does plausibly allege that Defendants Felsberg and Logatto failed to do so.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[8]    In any event, Plaintiff seems to abandon his failure-to-train theory, and any alternative theories based on actions by the Policymaker Defendants or widespread practices, in his opposition brief. *See* ECF No. 94 ¶ 242; *see* ECF No. 106 at 20. There, Plaintiff relies solely on the first theory of liability—that an official municipal policy violated his rights. *See* ECF No. 106 at 20. Plaintiff presumably refers to the alleged policy authorizing "the prosecution of Summons Court matters originating in Kings County by the NYPD." ECF No. 94 ¶ 13. But to sufficiently allege an official policy, a plaintiff must assert the existence of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. Here, Plaintiff cites an MOU between the Manhattan District Attorney's Office and the NYPD that was rescinded five years before the events giving rise to this action, which does not suffice. *See* ECF No. 94 ¶¶ 47, 121.

14

In this Circuit, it is well settled "that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Warheit v. City of New York*, 271 F. App'x 123, 126 (2d Cir. 2008). To plead a defendant's personal involvement, a plaintiff must show "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Here, Plaintiff alleges the second theory of liability—failure to intervene.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer is liable for preventable harm inflicted by other officers where the officer observes or has reason to know: "(1) that excessive force is being used"; "(2) that a citizen has been unjustifiably arrested"; or "(3) that any constitutional violation has been committed by a law enforcement official," but does not intervene. *Id.* And "[i]n order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring." *Id.*

Plaintiff first asserts that Defendants Steiger, Pierrilus, and Stahurski arrived at the scene "with ample time to observe their colleagues' unlawful conduct against Plaintiff," an "aware[ness] of the unlawful nature of this conduct," and with sufficient "means and opportunity to intervene in this conduct," but nevertheless "declined to do so." ECF No. 94 ¶ 149. The Court finds that these allegations are insufficient to survive a motion to dismiss, as they are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and entirely devoid of specific facts. *Iqbal*, 556 U.S. at 678. Thus, Plaintiff's

allegations with respect to Defendants Steiger, Pierrilus, and Stahurski do not state a claim for failure to intervene.

Plaintiff also asserts that "Defendants Felsberg and Logatto stood above Plaintiff while he remained pinned to the sidewalk by Defendants Stosch and Moye, observing their colleagues' assault against [Plaintiff] but declining to intervene," instead "intentionally obstructing the view of bystanders who attempted to record the assault against Plaintiff to assist in and/or facilitate this unlawful conduct." ECF No. 94 ¶ 155. These more specific allegations, by contrast, are sufficient to withstand a motion to dismiss. That is, Plaintiff plausibly alleges that Defendants Felsberg and Logatto had a realistic opportunity to prevent any potential constitutional violations, as they "stood above Plaintiff" observing "while he remained pinned to the sidewalk." *Id.* Moreover, if those Defendants had the opportunity to "intentionally obstruct[] the view of bystanders who attempted to record the assault," then presumably they had the opportunity to intervene in the alleged assault. *Id.* Therefore, Plaintiff's allegations with respect to Defendants Felsberg and Logatto properly state a claim for failure to intervene.

## VI.    First Amendment Retaliation Claim Against Defendant Moye

The Court next addresses Plaintiff's First Amendment retaliation claim against Officer Moye pursuant to § 1983. To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Officer Moye argues that this claim warrants dismissal, as Plaintiff fails to satisfy the second and third elements. The Court agrees on the second element and therefore declines to address the third element.

16

With respect to the second element, Plaintiff has not adequately alleged that Officer

Moye's actions were motivated or substantially caused by Plaintiff's exercise of his First

Amendment rights, including his "[l]awful[] recording" of Defendants.  ECF No. 94 ¶ 254.

Plaintiff's allegations against Officer Moye are limited to the following:  Officer Moye, along

with Officer Stosch, pinned Plaintiff to a sidewalk and adjacent wall, ECF No. 94 ¶ 154–55;

Officer Moye twisted Plaintiff's left arm behind his back, *id.* ¶¶ 153–54; and Officers Moye and

Stosch forced Plaintiff into a standing position by yanking his handcuffed arms, *id.* ¶ 156.

Nowhere does Plaintiff allege any sort of nexus between Officer Moye's actions and Plaintiff's

First Amendment rights, which justifies dismissal of Plaintiff's First Amendment retaliation

claim against Officer Moye.  *See Jordan v. Tilzer*, No. 21-cv-1938, 2022 WL 16544335, at *2

(2d Cir. Oct. 31, 2022) (affirming the dismissal of First Amendment retaliation claim where the

plaintiff "did not plead facts connecting any conduct protected by the First Amendment to the

alleged retaliation").

## VII.    State Law Claims[9]

### A.    *New York Civil Practice Law and Rules Article 78*

As for the state law claims, Plaintiff first seeks "injunctive and declaratory relief"

pursuant to Article 78 of the New York Civil Practice Law and Rules (the "CPLR").  ECF

No. 94 ¶¶ 290–93.  Article 78 "authorizes New York state courts to conduct special proceedings

in which a petitioner may obtain speedy review of state administrative action."  *Whitfield v. City

of New York*, 96 F.4th 504, 511 (2d Cir. 2024).  However, "[f]ederal courts are not subject to

---

[9]     Plaintiff indicated in his opposition brief that he "does not intend to proceed with his
claims under the New York State Constitution."  ECF No. 106 at 25.  Accordingly, those claims
are dismissed.  In addition, for the reasons discussed in Sections III and IV, Plaintiff's claim
against the Policymaker Defendants and the City for negligent training, retention, and
supervision under New York law is also dismissed.

New York State procedural rules, including Article 78 of [the CPLR], and have no jurisdiction over claims invoking Article 78." *Mai v. New York State Off. of Temp. & Disability Assistance*, No. 23-mc-2274, 2023 WL 5978032, at *1 (E.D.N.Y. Sept. 14, 2023). Thus, Plaintiff's Article 78 claim is dismissed without prejudice for lack of subject-matter jurisdiction.

### B.    *False Arrest/Imprisonment Claim Against Defendant Moye*

Plaintiff also brings a false arrest and false imprisonment claim under New York law against Officer Moye, who moves to dismiss that claim. I "use the terms 'false arrest' and 'false imprisonment' interchangeably because, under New York law, the tort of false arrest is synonymous with that of false imprisonment." *Greene v. Bryan*, No. 15-cv-249, 2018 WL 3539811, at *1 n.1 (E.D.N.Y. July 23, 2018). To prevail on a false arrest claim in New York, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022). "An arrest is privileged if it is based on probable cause, for probable cause is a complete defense to a false arrest claim." *Id.*

Here, Plaintiff properly pleads a false arrest claim against Officer Moye under New York law. The first three elements are easily met, as Plaintiff alleges that Officer Moye intended to confine him by playing an active role in his April 22, 2023, arrest, *see* ECF No. 94 ¶¶ 153–56, and that Plaintiff was conscious of the arrest, to which he did not consent. Indeed, Plaintiff alleges that he repeatedly shouted that "he could not breathe." *Id.* ¶ 144. As to the fourth element, Plaintiff properly alleges that his arrest was not "privileged," or based on probable cause, because he characterizes his conduct as "entirely lawful," *id.* ¶ 128, and he was apparently confused about Defendants' accusation that he littered a box of Mike and Ikes, *see id.* ¶ 134 ("I

littered?").  Officer Moye rebuts that Plaintiff does not allege that Officer Moye was even

"involved in the decision to stop or arrest" Plaintiff, but he cites no authority supporting the

proposition that a false arrest claim cannot lie against a defendant who did not instigate the stop

but nevertheless played an active role in the arrest.  ECF No. 105 at 36–37; *see Levantino v.*

*Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014) (Under New York law, "personal involvement

on the part of the defendant is . . . a prerequisite to liability for false arrest.").

For these reasons, Plaintiff's false arrest claim against Officer Moye survives the motion

to dismiss.

### C.    *Negligent Infliction of Emotional Distress Claim Against Defendant Moye*

Further, Officer Moye moves to dismiss Plaintiff's negligent infliction of emotional

distress claim against him.  The Court dismisses this claim as duplicative of Plaintiff's

intentional tort claims against Officer Moye—Plaintiff's false arrest, assault, and battery claims,

all of which arise from the same arrest.  *See Moore v. City of New York*, No. 22-cv-10957, 2024

WL 3361193, at *9 (S.D.N.Y. July 10, 2024) (dismissing negligent infliction of emotional

distress claim "as duplicative because the underlying conduct is actionable as assault and

battery"); *see also Vivar v. City of New York*, No. 18-cv-5987, 2020 WL 1505654, at *16

(S.D.N.Y. Mar. 30, 2020) (explaining that "all four New York State Appellate Division courts

have held that [emotional distress] claims may never be brought when the challenged conduct

falls well within the ambit of other traditional tort liability").

### D.    *Denial of Medical Care*

Plaintiff next alleges that he was denied proper medical care in violation of § 28 of New

York's Civil Rights Law, which confers a private right of action to anyone who did not receive

appropriate medical attention while in custody and suffered a serious injury as a result.  *See* N.Y.

Civ. Rights Law § 28.  Plaintiff does not specify against whom he brings this claim, other than certain unnamed "Defendants."  *See* ECF No. 94 ¶ 313 ("Defendants abdicated their duties under this statute and failed to provide and/or delayed . . . providing medical care to Plaintiff while he was in Defendants' custody.").  Nor does Plaintiff set forth any specific facts supporting this claim, relying instead on conclusory assertions.  *See id.* ¶ 161 (Plaintiff "needed urgent medical care and expressed that he wished to go to a hospital," but "Defendants denied and/or delayed Plaintiff's medical care, causing additional suffering and exacerbating his serious injuries.").  Thus, this cause of action is dismissed.

### E.    Negligence

Plaintiff devotes two paragraphs to a negligence claim against "all Defendants," alleging that "Defendants owed a special duty to Plaintiff and breached this duty through their conduct described herein."  *Id.* ¶ 320.  Plaintiff does not indicate who among the 16 defendants had and breached a special duty to Plaintiff, and through what conduct that breach occurred.  Accordingly, Plaintiff's negligence claim is dismissed.

### F.    Interference with the Right to Record Police

Finally, Plaintiff alleges that "Defendants violated Plaintiff's right to be free from interference when lawfully recording police activity" in violation of New York City's Right to Record Act.  *See* N.Y.C. Admin. Code § 14-189.  The Right to Record Act provides that "[a] person may record police activities and maintain custody and control of any such recording and of any property or instruments used in such recording" within certain parameters.  *Id.* § 14-189(b).  Although Plaintiff alleges that he began to record Defendants Stosch, Casimir, and Guarrera as they approached him, *see* ECF No. 94 ¶¶ 129–31, he does not allege that those Defendants "prevent[ed] or attempt[ed] to prevent his recording" specifically; "threaten[ed]"

Plaintiff to stop recording; "arrest[ed] him because [he] recorded police activities"; or "seiz[ed]" the cell phone Plaintiff was using to record, which defeats that claim. *See* N.Y.C. Admin. Code § 14-189(c)(1). And Plaintiff lacks standing to bring claims on behalf of the civilians recording Plaintiff's arrest. *See id.* at § 14-189(c)(3) (conferring a private right of action to "[a] person subject to unlawful interference with recording police activities"). For these reasons, Plaintiff's cause of action under the Right to Record Act is dismissed.

## CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED in part and DENIED in part.[10] The following claims, including those not challenged in this motion, remain in this litigation:

- First Amendment retaliation, malicious prosecution, violation of Plaintiff's right to a fair trial, fabrication of evidence, intentional infliction of emotional distress, and negligent infliction of emotional distress against Defendants Casimir, Stosch, and Guarrera;

- Excessive force, false arrest, and assault and battery against Defendants Casimir, Stosch, Guarrera, and Moye;

- Violation of New York City Administrative Code Title 8, Chapter 8, against Defendants City, Casimir, Stosch, Guarrera, and Moye;

- Failure to intervene against Defendants Felsberg and Logatto; and

- Conversion against Defendant Stosch.

Fact discovery in this case closed on June 4, 2025. *See* May 23, 2025, Text Order. Any party that intends to move for summary judgment on the remaining claims, or to exclude the testimony of experts pursuant to Rules 702-705 of the Federal Rules of Evidence and the

---

[10]    Unless otherwise indicated, the claims dismissed herein are dismissed with prejudice. Fact discovery is now closed, Plaintiff has already had an opportunity to amend the complaint, and Plaintiff does not request further leave to amend. *See generally* ECF No. 106. For the avoidance of doubt, Plaintiff is denied such leave. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) ("[N]o court can be said to have erred in failing to grant a request that was not made.").

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) line of cases, shall file on or before August 25, 2025, a pre-motion letter that complies with Section IV.A of the Court's Individual Practices, including the requirement that any such letter related to a motion for summary judgment must be accompanied by a statement of material facts that complies with Local Civil Rule 56.1.  There shall be no cross-motions.  Any party opposing a motion for summary judgment shall file a responsive letter and responsive statement that complies with Local Civil Rule 56.1 on or before September 15, 2025.  If no party moves for summary judgment, the parties shall file a jointly proposed pretrial order that complies with Section VI.B of the Court's Individual Practices on or before September 22, 2025.


SO ORDERED.

                                                     */s/ Hector Gonzalez*
                                                     HECTOR GONZALEZ
                                                United States District Judge


Dated:  Brooklyn, New York
        July 25, 2025