UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MANUEL J. MORALES,

Plaintiff,

v.

THE CITY OF NEW YORK, ET AL.,

Defendants.

**MEMORANDUM & ORDER**
24-CV-1866 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff brought this action against the City of New York and several New York City Police Department officers, asserting various state and federal claims arising out of a 2023 arrest for littering. In short, Plaintiff says the individual Defendants used excessive force in violation of the Fourth Amendment when they arrested him, and then fabricated evidence to prosecute him for an unrelated offense. Defendants move for summary judgment on each of Plaintiff's claims. ECF No. 140.[1] Because the Court agrees that Plaintiff's federal claims fail as a matter of law, and because it declines to retain jurisdiction over the remaining state law claims, Defendants' motion is GRANTED.

## BACKGROUND[2]

On April 22, 2023, Plaintiff, then 21-years-old, was standing on a Brooklyn sidewalk when he threw a piece of trash on the ground. ECF No. 142-2 (Morales Deposition) at 75:7–23.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2] The Court does not rely solely on Defendants' Rule 56.1 Statement or Plaintiff's response to Defendants' Statement in assessing the facts; it has independently reviewed all the evidence in the record, including the video evidence. See *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*,

Defendants NYPD Officers Stosch, Guarrera, and Casimir saw Plaintiff throw the trash onto the sidewalk. ECF No. 144 at 2–3. New York City Administrative Code Section 16-118 prohibits throwing "garbage . . . upon any street or public place." N.Y.C. Admin. Code § 16–118(1)(a). Violation of Section 16–118(1)(a) is punishable by a fine or imprisonment of up to one day. *Id.* § 16–118(8).

Defendants Stosch, Guarrera, and Casimir exited their vehicle, walked up to Plaintiff, detained him, and requested his identification. ECF No. 140-11 (Guarrera Body-Worn Camera ("BWC")) at 00:50–01:10. Defendant Stosch began to write Plaintiff a ticket. ECF No. 144 at 37. At that moment, Plaintiff gestured toward a nearby group of several individuals and called on them to "pull up." Guarrera BWC at 01:11–01:12. He also began to film the incident on his phone. ECF No. 140-10 (Stosch BWC) at 01:40–2:00.

A visibly hostile crowd immediately began to form around the officers. ECF No. 144 at 37; Guarrera BWC at 01:15–01:30; ECF No. 140-12 (Casimir BWC) at 01:15–01:30. An individual appeared from a doorway behind them. Guarrera BWC at 01:17–01:22. Another suddenly came within inches of Defendant Stosch. Stosch BWC at 01:30. Despite numerous dispersal orders, the crowd refused to leave and grew increasingly aggressive. ECF No. 144 at 38–39; Casimir BWC at 01:33–2:00; ECF No. 140-14 (Moye BWC) at 01:00–01:40. At several points, Defendants used physical force to keep the crowd back. Moye BWC at 01:09; Casimir

373 F.3d 241, 244 (2d Cir. 2004) ("[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion."); *Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (noting that, at summary judgment, a court should "view[] the facts in the light depicted by the videotape").

BWC at 01:34. But the crowd stayed, did not disperse, and became even more aggressive toward the officers. ECF No. 144 at 39.

At that point, Defendant Casimir instructed the other officers to arrest Plaintiff and bring him to the precinct to finish writing the summons. ECF No. 144 at 11–12; Stosch BWC at 01:58–02:02. Defendant Stosch informed Plaintiff that he was under arrest, took his phone, and tried to place his hands behind his back. Stosch BWC at 02:02–02:06. Defendants Casimir and Guarrera helped restrain Plaintiff, who was resisting, and began to apply handcuffs. Casimir BWC at 02:05–02:15; Guarrera BWC at 02:02–02:08.

Despite the efforts of three police officers, however, Plaintiff would not submit. Guarrera BWC at 2:02–03:16. For over a minute, Plaintiff repeatedly moved his hands, bucked his shoulders, and attempted to worm out of the officers' grip. Stosch BWC at 02:06–02:17; ECF No. 140-16 (Bystander Video 1; "BV 1") at 00:20–00:45. At one point, Defendants Stosch and Guarrera pushed Plaintiff against a metal door. Guarrera BWC at 02:39–02:44. Plaintiff continued to resist being handcuffed. *Id.* at 02:47–03:10. He also twice tried to break free from the officers. BV 1 at 01:18–01:19, 01:25–01:29.

This time, Defendants forced Plaintiff to the ground. *Id.* at 01:30–01:34. Defendant Stosch crouched over Plaintiff while Defendant Moye, who had recently arrived on-scene, held Plaintiff's arm. ECF No. 140-15 (Bystander Video 2; "BV 2") at 00:06–00:19; Moye BWC at 03:00–03:05. Over the next minute, and despite numerous orders to stop resisting, Defendants struggled to handcuff him. Moye BWC at 02:59–03:55. Plaintiff stated that he could not breathe and moved his hands in front of his body. *Id.* at 03:12–03:16. He also flailed his legs. BV 1 at

02:05–02:09. Eventually, Defendants Stosch and Moye grabbed Plaintiff's hands, forced them behind his back, and subdued him. Moye BWC at 03:17–03:55.

While Plaintiff was being arrested, the crowd continued to heckle and physically confront Defendants. Casimir BWC at 2:13–04:13; ECF No. 140-17 (Logatto BWC) at 1:19–01:51. During the commotion, Defendant Casimir pepper sprayed an individual in the crowd. Casimir BWC at 02:54–02:55. The pepper spray was swept backward by the wind and into Plaintiff's and several officers' faces. ECF No. 144 at 28–30, 48.

Defendants pulled Plaintiff off the ground and led him, still resisting, into a police vehicle. Moye BWC at 03:55–04:46; Logatto BWC at 02:19–02:32. Plaintiff was taken to a nearby precinct, where he requested medical attention for the pepper spray and a cut on his knee. ECF No. 144 at 30–31. Plaintiff declined to go to the hospital. *Id.* at 31. According to his medical records, he was diagnosed nine months later with a torn rotator cuff. ECF No. 144-13 at 2.

At the precinct, Defendants searched Plaintiff and found a knife in his front pocket. ECF No. 144 at 48. Defendant Stosch processed Plaintiff for resisting arrest, obstruction of governmental administration in the second degree, disorderly conduct, and littering. ECF No. 144-10. Defendants Stosch and Casimir also issued Plaintiff a criminal summons for a violation of New York City Administrative Code Section 10-133(c), which prohibits carrying a knife "in open view." N.Y.C. Admin. Code § 10-133(c). ECF No. 144-18. The summons included a court appearance date and time. *Id.* Plaintiff was then released, approximately six hours after his arrest. ECF No. 144 at 33.

Plaintiff appeared in New York criminal court twice to contest the summons. ECF No. 144 at 33; ECF No. 144-14. At his first appearance, Plaintiff's attorney requested a trial,

which the judge granted. ECF No. 144-14 at 4. At his second appearance one month later, however, Defendant Stosch failed to appear, and the judge immediately dismissed the case for failure to prosecute. *Id.* at 7.

Plaintiff filed this action on March 13, 2024. ECF No. 1. After numerous stipulations, withdrawals, and a partial grant of Defendants' motion to dismiss, the remaining claims in this action are: First Amendment retaliation against Defendant Stosch; malicious prosecution, violation of Plaintiff's right to a fair trial, and fabrication of evidence against Defendants Casimir, Stosch, and Guarrera; negligent infliction of emotional distress against Defendant Casimir; excessive force, false arrest, and assault and battery against Defendants Casimir, Stosch, Guarrera, and Moye; and violation of New York City Administrative Code Title 8, Chapter 8, against Defendants City, Casimir, Stosch, Guarrera, and Moye. *See* November 17, 2025, Text Order. The federal claims are each brought under 42 U.S.C. § 1983. ECF No. 94 at 34, 38, 41, 43.

On May 28, 2026, Defendants moved for summary judgment. ECF No. 140. Plaintiff filed his response on July 24, 2026. ECF No. 145. Defendants filed their reply on August 14, 2026. ECF No. 146.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). There is no genuine

dispute of material fact if no reasonable jury could return a verdict for the nonmoving party. *Id.* at 248. Although the Court must construe facts in the light most favorable to the nonmoving party, the Court may not adopt a party's characterization of events "blatantly contradicted" by clear video evidence. *Scott*, 550 U.S. at 380.

The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). "[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion." *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

## DISCUSSION

Defendants move for summary judgment on each of Plaintiff's federal and state law claims. They assert a variety of defenses to each: that their force was reasonable under the circumstances; that the criminal summons did not deprive Plaintiff of his liberty; that no fabricated information was forwarded to prosecutors; that they had probable cause to arrest Plaintiff; and, that they have qualified immunity. ECF No. 140-1 at 10–11. Plaintiff contends that each of his claims presents genuine issues of material fact precluding summary judgment. ECF No. 145 at 6–23.

The Court analyzes Plaintiff's federal excessive force, malicious prosecution, fair trial, and free speech claims in that order. Because each claim fails as a matter of law, the Court

declines to exercise supplemental jurisdiction over the remaining state law claims and grants Defendants' motion for summary judgment.

## I. Excessive Force

Plaintiff argues that the individual Defendants used excessive force in violation of the Fourth Amendment when they arrested him. ECF No. 145 at 6. Defendants raise two arguments in response. First, they contend that the force used was reasonable. ECF No. 140-1 at 19–23. Second, they say they are entitled to qualified immunity. *Id.* at 23–25. The Court agrees that the Defendants are entitled to qualified immunity.[3]

Qualified immunity shields government officials performing discretionary functions from liability for civil damages. *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995). Officials are shielded from liability if their conduct does not violate clearly established statutory or constitutional rights of which every reasonable officer would have known. *Cugini v. City of New York*, 941 F.3d 604, 615 (2d Cir. 2019). In the excessive force context, a court must assess whether, under clearly established law and drawing all inferences in the plaintiff's favor, every reasonable officer would have concluded that the defendant's actions violated the plaintiff's Fourth Amendment rights. *Id.* "In other words, summary judgment for the defendant is required

[3] Qualified immunity often requires analyzing whether (1) the official violated a statutory or constitutional right, and whether (2) that right was clearly established at the time of the challenged conduct. District courts in their "sound discretion" may skip the first step and grant qualified immunity by concluding that a right is not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Coollick v. Hughes*, 699 F.3d 211, 220–21 (2d Cir. 2012). Here, the Court elects to begin and end with the "clearly established" element. Skipping the first step avoids the "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Pearson*, 555 U.S. at 236–37.

where the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances." *Id.*

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "While a case need not be directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Matusak v. Daminski*, 165 F.4th 702, 712 (2d Cir. 2026). Clearly established law must be "particularized" to the facts of the case, a requirement that is "especially important in excessive force cases." *Id.* at 712–13. Police officers are therefore "entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018); *Mullenix v. Luna,* 577 U.S. 7, 18 (2015) ("[Q]ualified immunity protects actions in the hazy border between excessive and acceptable force.").

Plaintiff alleges that Defendants violated his clearly established Fourth Amendment rights when they used excessive force during his arrest. ECF No. 145 at 6–16. Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Because the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," determining excessiveness requires "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. "To assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading up to the climactic moment." *Barnes v. Felix*, 605 U.S. 73, 76 (2025). "The 'reasonableness' of a

particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiff's characterization of his arrest, if accepted, might suffice to defeat qualified immunity. In his amended complaint and Rule 56.1 Statement, Plaintiff alleges that Defendants "threw [him] to the sidewalk face-first" "without cause or justification," that Defendant Stosch placed his body weight on Plaintiff's back and shoved his face into a brick wall, that Defendants twisted his arms behind his back, and that they "applied overly tight handcuffs," all while Plaintiff remained compliant. ECF No. 94 at 24–26; ECF No. 144 at 16, 21, 24. It is "well established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive." *Tracy v. Freshwater*, 623 F.3d 90, 99 n.5 (2d Cir. 2010).

Unfortunately for Plaintiff, the video evidence presents a very different story. *See Scott*, 550 U.S. at 380–81. Before, during, and after arrest, Plaintiff moved his hands, bucked his shoulders, and repeatedly attempted to jerk out of the Defendants' grasp. *See* Stosch BWC at 02:06–02:17; Guarrera BWC at 02:47–03:10; Moye BWC at 03:12–03:16; Logatto BWC at 02:19–02:32; BV 1 at 00:20–00:45, 01:18–01:19, 01:25–01:29, 02:05–02:09. Put simply, Plaintiff resisted arrest.

Plaintiff also mischaracterizes the nature of the force used against him. The video evidence does not show Defendants "throwing" Plaintiff to the ground "face-first." ECF No. 145 at 8; Moye BWC at 02:54–02:58; BV 1 at 01:30–01:33. It does not show Defendant Stosch "shoving [Plaintiff's] face into the brick wall of the nearby building" or "against a metal pipe." ECF No. 145 at 8; Moye BWC at 3:03–3:08, 03:45–03:50; BV 2 at 00:15–00:18. And it does

not show any Defendant "kneeling on [Plaintiff's] back." ECF No. 145 at 7; Moye BWC at 03:30–03:50; Guarrera BWC at 03:30, 03:36–03:38; BV 1 at 2:06; BV 2 at 00:08–00:11.

The record is equally devoid of any support for the argument that Defendants applied "overly tight handcuffs" causing "lasting pain." ECF No. 145 at 9. Plaintiff cites a five-second portion of Defendant Moye's BWC footage, but that portion does not show Defendants handcuffing Plaintiff at all, let alone using excessive force. *Id.*; Moye BWC at 03:10–03:15. Plaintiff includes no medical records or photographs documenting the alleged injuries to his wrist. He did not testify about them during his deposition.

Properly characterized, the video evidence shows Defendants overcoming Plaintiff's active resistance by forcing him against a door, pinning him to the ground, and pulling his hands behind his back. The question is therefore not whether the right to be free from gratuitous force was clearly established, but whether significant force against a non-compliant but non-threatening arrestee under these circumstances violated clearly established law. The answer is no.

Take *Brown v. City of New York*, 862 F.3d 182 (2d Cir. 2017) ("*Brown II*"). In that decision, the defendants arrested Brown for disorderly conduct, a violation under New York law. *Id.* at 189. When Brown refused to place her hands behind her back for handcuffing, the defendants kicked her legs out from under her, pushed her face onto the pavement, and pepper sprayed her face twice. *Id.* at 189–90. In an earlier decision, the Second Circuit denied the defendants' motion for summary judgment, holding that a reasonable jury could find that their conduct violated the Fourth Amendment. *See Brown v. City of New York*, 798 F.3d 94, 103 (2d Cir. 2015) ("*Brown I*"). On remand, the district court awarded summary judgment to the defendants on qualified immunity grounds. *Brown II*, 862 F.3d at 184. The Second Circuit

affirmed, holding that no precedential decision established that the defendants' conduct violated clearly established law. *Id.* at 190. Crucial to the court's conclusion was the fact that the officers "exerted physical force to overcome resistance to arrest." *Id.* at 191.

*Brown II* strongly militates in favor of granting Defendants qualified immunity. Courts have understood it to hold that "there is no clearly established law that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force." *Harris v. Leon*, No. 20-cv-10864, 2023 WL 2051171, at *7 (S.D.N.Y. Feb. 16, 2023). If anything, the force at issue in *Brown II* was far more significant than that presented here. All agree that Defendants did not directly (or even intentionally) pepper spray Plaintiff, *see* ECF No. 144 at 48, nor did they push Plaintiff's face onto the pavement or kick his legs out from under him. If the officers in *Brown II* had qualified immunity, surely the same applies to the facts of this case.[4]

In *Matusak*, the Second Circuit again granted qualified immunity where the suspect failed to follow directions and submit to handcuffs. 165 F.4th at 720. There, the plaintiff "resist[ed] the officers' attempts to pull out his arms for handcuffing" and hid his hands beneath his body. *Id.* at 715–16. Officers struck the plaintiff with their fists and knees and tasered him. *Id.* at 708. Citing *Brown II*, the court held that the officers were entitled to qualified immunity. *Id.* at 720. Rejecting the plaintiff's argument that the use of force was "gratuitous," the court emphasized

---

[4] For the avoidance of doubt, *Brown I* did not clearly establish that Defendants' use of force was excessive. Aside from involving a greater level of force than presented in this case, "*Brown I* merely found that a reasonable jury *could* find excessive force." *Harris*, 2023 WL 2051171, at *6 (emphasis added). Holding that a reasonable jury could find a Fourth Amendment violation does not clearly establish that similar conduct violates the Fourth Amendment. *See Zorn v. Linton*, 607 U.S. 568, 573 (2026).

that the officers exerted force "only after [the plaintiff] failed to produce his hands" and after they had directed him to stop resisting. *Id.* at 719–20.

Like *Brown II*, *Matusak* weighs in favor of granting qualified immunity. Once again, Defendants' use of force pales in comparison to the force in *Matusak*. Like in *Matusak*, however, Defendants' force was not gratuitous. Defendants applied force only after Plaintiff failed to submit to handcuffing, ignored their orders, and attempted to free himself. They stopped using force immediately after Plaintiff was handcuffed. Moye BWC at 03:53–04:00. The force used here, like in *Matusak*, was a reasonable—indeed, necessary—response to Plaintiff's recalcitrance. *See Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000) (observing that a suspect's resistance "justifies the officer's use of some degree of force" and that the force "must be reasonably related to the nature of the resistance and the force used . . . against the officer").

In *Lennon*, the plaintiff refused to exit a car that belonged to her husband. 66 F.3d at 419. The Second Circuit held that an officer was entitled to summary judgment on qualified immunity grounds where he "wrapped his arm around [the plaintiff's] neck, shoulder, and arm, and pulled her from the car," injuring her wrist. *Id.* at 426. The court held that the intrusion on the plaintiff's Fourth Amendment rights "was extremely limited" and was designed to effect the arrest. *Id.* In *Lennon*, as here, "no jury could find that it was objectively unreasonable for the officers to believe" their force was lawful. *Id.* Notably, the plaintiff's injury did not deprive the officers of qualified immunity. Nor should it here. *See Sanchez v. Port Auth. of New York & New Jersey*, No. 08-cv-1028, 2012 WL 1068078, at *9–10 (E.D.N.Y. Mar. 29, 2012) (granting

qualified immunity and holding that "reasonable force does not become unconstitutional merely because it caused the plaintiff serious injury").

Equally informative are decisions where the Second Circuit denied police officers summary judgment. In *Robison v. Via*, 821 F.2d 913 (2d Cir. 1987), the Second Circuit vacated a district court's grant of summary judgment where the officer "pushed" the plaintiff "up against the door and yanked [her] out, and threw [her] up against the fender." *Id.* at 916. The plaintiff was not resisting arrest. In fact, no arrest had even been attempted, and the force was applied to prevent the plaintiff from interfering with her children's removal from her custody. *See id.* at 916–17; *Brown II*, 862 F.3d at 191 (distinguishing *Robison* on this ground). Likewise, in *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), the Second Circuit vacated an award of summary judgment where police used extreme force against "passively resisting protestors." *Id.* at 117. The officers threw a protestor "face-down to the ground," dragged another "face-down by his legs, causing a second-degree burn on his chest," placed a knee on an individual's neck and rammed his head "into a wall at a high speed." *Id.* at 123. The force alleged in *Amnesty America* is not comparable to the force used here. Additionally, Plaintiff's resistance "involved some substantial physical effort" in contrast to the *Amnesty* protestors, whose conduct was "characterized by an utter lack of physical exertion." *Matusak*, 165 F.4th at 719 (citing *Amnesty*, 361 F.3d at 118).

Plaintiff cites several cases in support of his argument that Defendants violated clearly established law. ECF No. 145 at 14–15. Each concerns, however, the use of "significant force against a restrained arrestee who is not actively resisting." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 151 (2d Cir. 2021). In *Ketcham*, the defendant "deliberately slammed [the plaintiff's] head into the car's doorframe despite him being restrained and not resisting." *Id.* In

*Jones v. Treubig*, 963 F.3d 214, 230 (2d Cir. 2020), the court denied qualified immunity where a reasonable jury could have found that police tasered the plaintiff while he was "face down on the ground with his arms spread."[5] In *Cugini*, officers applied overly tight handcuffs and, despite the plaintiff's cries of pain, continued to tighten them. 941 F.3d at 614. The plaintiff "did not try to flee or resist Palazzola's attempt to handcuff her." *Id.* These decisions bear no relation to the facts of this case and cannot clearly establish that Defendants' actions were unlawful.

In an effort to salvage his position, Plaintiff argues that even if he was resisting arrest, "resisting arrest does not give the officer license to use force without limit." ECF No. 145 at 15. He cites *Sullivan* for this proposition, but his argument fails for two reasons. First, *Sullivan* did not address whether the defendant used excessive force, so it could not have clearly established the unlawfulness of Defendants' conduct. Second, *Sullivan*'s admonition that officers may not "use force without limit" to overcome a subject's resistance does not clearly establish the law in this case. This principle "lacks the high degree of specificity needed to make clear" that the Defendants acted unlawfully. *Zorn*, 607 U.S. at 574. It does not "obviously resolve" whether pinning a noncompliant suspect to the ground and pulling his arm behind his back violates the Fourth Amendment. *Id.* The Supreme Court has "repeatedly told courts . . . not to define clearly

---

[5] Plaintiff cites a similar case, *Jackson v. Tellado*, 236 F. Supp. 3d 636, 669 (E.D.N.Y. 2017), for the principle that it is excessive to pepper spray "a restrained and cooperative person." Plaintiff's citation to this decision is puzzling on several levels. First, a district court decision does not "clearly establish" the law for the purposes of qualified immunity. *Hawkins v. Steingut*, 829 F.2d 317, 321 (2d Cir. 1987). Second, Plaintiff concedes that Defendants did not intentionally pepper spray him. ECF No. 144 at 48. Under the Fourth Amendment, unintentional force is not "force" at all. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). The inadvertent pepper spraying of Plaintiff is therefore irrelevant to the qualified immunity analysis.

established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The Court rejects Plaintiff's attempt to do so.

Plaintiff's final gambit is revealing: he argues that, at least sometimes, "no case directly on point is required." ECF No. 145 at 15. But the very decision he cites for this principle made clear that existing precedent must still "place[] the statutory or constitutional question beyond debate." *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014). Far from presenting "novel circumstances," *Hope v. Pelzer*, 536 U.S. 730, 731 (2002), this case falls squarely within decisions holding very similar conduct shielded by qualified immunity. *See Brown II*, 862 F.3d at 190; *Matusak*, 165 F.4th at 720; *Lennon*, 66 F.3d at 426.

At bottom, viewing the facts in the light depicted by the video, Defendants were executing a lawful[6] arrest of an unwilling suspect in the midst of a hostile crowd.[7] After trying

---

[6] At times, Plaintiff appears to question the lawfulness of his arrest, citing a provision of New York law that he says required Defendants to issue him an appearance ticket instead of making a custodial arrest. ECF No. 145 at 24 (citing N.Y. Crim. Pro. § 150.20). For starters, police officers may arrest a suspect even for a violation like littering. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354–55 (2001); *Kee v. City of New York*, 12 F.4th 150, 159–60 (2d Cir. 2021). All agree Defendants saw Plaintiff litter, which gave them probable cause to arrest him. *Kee*, 12 F.4th at 159. At the very least, Defendants had "arguable probable cause," which is enough for qualified immunity. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). The fact that the arrest may have violated state law or internal police procedure is irrelevant. *See Brown I*, 798 F.3d at 100 ("A defense of qualified immunity is not displaced by a violation of state law requirements."). The Court also notes that Plaintiff's interpretation of Section 150.20 has been rejected by numerous courts in this Circuit. *See United States v. Anderson*, No. 26-cr-141, 2026 WL 3072620, at *6 (S.D.N.Y. Oct. 14, 2026); *United States v. Balkissoon*, 579 F. Supp. 3d 367, 373 n.7 (E.D.N.Y. 2022).

[7] To be clear, the Court's holding is based primarily on Plaintiff's conduct during arrest. *See Graham*, 490 U.S. at 396 (noting that reasonableness of force depends on whether the suspect posed a risk of harm to others, was resisting arrest, or was attempting to flee). The crowd's hostility is nonetheless relevant to the qualified immunity analysis as part of "the circumstances" of the case. *See Cugini*, 941 F.3d at 615; *Acosta v. City of Costa Mesa*, 718 F.3d 800, 826 (9th Cir. 2013) ("Considering the volatility of the situation and the presence of a large crowd of hostile demonstrators, the amount of force the officers used . . . was reasonable.");

unsuccessfully to handcuff Plaintiff for over a minute, Defendants acted swiftly to subdue him. Once Plaintiff was in handcuffs, they stopped using significant force against him. No rational jury could conclude that every reasonable officer would know that forcing Plaintiff to the ground and pulling his arms behind his back was excessive under the circumstances. *See Cugini*, 941 F.3d at 615. Given the facts of *Brown II*, *Matusak*, and *Lennon*, officers of reasonable competence could at most disagree about the legality of Defendants' actions. *Id.* Defendants are therefore entitled to qualified immunity from Plaintiff's Fourth Amendment claim.

**II. Malicious Prosecution**

Plaintiff argues that the officers' issuance of a criminal summons related to his knife constitutes malicious prosecution. ECF No. 145 at 16–17. Defendants respond that his claim fails because he did not suffer a deprivation of liberty. ECF No. 140-1 at 26. The Court agrees.

To establish a claim for malicious prosecution under Section 1983, a plaintiff must prove the elements of a malicious prosecution claim under New York state law, as well as a violation of his rights under the Fourth Amendment.[8] *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010). A claim for malicious prosecution under New York state law requires "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* In addition to these requirements,

---

*Gomez v. City of Whittier*, 211 F. App'x 573, 576 (9th Cir. 2006) (granting qualified immunity where, "[i]n light of the officers' legitimate interest in maintaining control of the crowd, and based on plaintiffs' admitted behavior, the officers could have reasonably felt threatened.").

[8] In his amended complaint, Plaintiff also brought his malicious prosecution claim under the Fourteenth Amendment. ECF No. 94 at 41. Because the Fourteenth Amendment right to substantive due process will not support a federal claim for malicious prosecution, the Court analyzes his claim solely under the Fourth Amendment. *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 114–15 (2d Cir. 1995).

a plaintiff must show "some deprivation of liberty consistent with the concept of 'seizure.'" *Singer*, 63 F.3d at 116. "This requirement is necessary to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions—*i.e.*, a harm cognizable under § 1983." *Id.* Only the "deprivation of liberty" element is at issue here. ECF No. 140-1 at 26.

Plaintiff cites two facts to establish that Defendants deprived him of his liberty. First, he says he was forced to "remain[] in custody while wholly fabricated charges were drawn up against him." ECF No. 145 at 17. Second, he avers that he made two in-court appearances to have the knife charge dismissed. *Id.* Both arguments fail.

First, Plaintiff's arrest "cannot serve as the predicate deprivation of liberty." *Singer*, 63 F.3d at 117. The Second Circuit has made clear that malicious prosecution requires a deprivation of liberty "effected pursuant to legal process," for the "perversion of proper legal procedures" is the very essence of the tort. *Id.* at 116–17. Plaintiff's arrest occurred before any arraignment and without a warrant, so it was not "pursuant to legal process." *Id.* at 117. Plaintiff's argument therefore sounds in false imprisonment, not malicious prosecution. *Id.*

In any event, there is no evidence Plaintiff was detained because of his possession of the knife, which was not discovered until after he arrived at the precinct. ECF No. 144 at 43. Plaintiff's assertion that Defendants detained him for some unspecified period of time solely because of the knife is unsupported in the record and appears for the first time in his response brief. *See Barnes v. Cnty. of Suffolk*, No. 19-cv-1677, 2026 WL 2937657, at *8 (E.D.N.Y. Sep. 30, 2026) ("As a threshold matter, the Court does not, and cannot, credit Plaintiff's allegations that are newly raised in opposition to summary judgment.").

Second, Plaintiff's court appearances do not constitute a deprivation of liberty either. Plaintiff went to criminal court twice. *See* ECF No. 144-14. At the first proceeding, he was

informed of the charge against him and demanded a trial. *Id.* at 3–5. At the second, the judge immediately dismissed the case for failure to prosecute. *Id.* at 7. The transcript is less than a page long and the proceeding could not have lasted more than a few minutes.

Only a "*post*-arraignment deprivation of liberty that rises to the level of a constitutional violation" implicates the Fourth Amendment. *Singer*, 63 F.3d at 117 (emphasis added). Plaintiff's first appearance, assuming it was the arraignment, does not suffice. *See also Mortimer v. Wilson*, No. 15-cv-7186, 2020 WL 3791892, at *13 (S.D.N.Y. July 7, 2020) ("[T]he Second Circuit has been clear that a single court appearance at an arraignment does not amount to a deprivation of liberty that will support a malicious prosecution claim."). The question therefore becomes whether Plaintiff's truncated second appearance rises to the level of a Fourth Amendment seizure. *Singer*, 63 F.3d. at 117. It does not.

In *Faruki v. City of New York*, 517 F. App'x 1 (2d Cir. 2013), the Second Circuit confronted this very question. After arresting the plaintiff, the defendant officer gave her a summons for disorderly conduct, which required her to appear in court. *See Faruki v. City of New York*, No. 10-cv-9614, 2012 WL 1085533, at *2 (S.D.N.Y. Mar. 30, 2012), *aff'd*, 517 F. App'x 1 (2d Cir. 2013). The plaintiff appeared in court twice: once for her arraignment and once more for trial, at which point the court dismissed the case for failure to prosecute. *Id.* at *3. The plaintiff sued for, *inter alia*, malicious prosecution. *Id.* at *1. On appeal, the Second Circuit affirmed the district court's grant of summary judgment on the malicious prosecution claim, holding that "a requirement that [the plaintiff] appear in court on two occasions" was "an

insufficient deprivation of liberty." *Faruki*, 517 F. App'x at 2. The court emphasized the plaintiff's relatively few court appearances and lack of travel restrictions. *Id.*

*Faruki* supports the outcome here. Although Plaintiff attempts to distinguish it by arguing that he was subject to travel restrictions, *see* ECF No. 145 at 17–18, his "restrictions" were the same at issue in *Faruki*: the requirement to appear in court twice. *Faruki*, 517 F. App'x at 2; *see also Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir.2010) ("[A] pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."). There is no evidence in the record that Plaintiff's ability to travel was impeded in any meaningful way, such as through release on recognizance, conditions of release, bail, or out-of-state travel restrictions. *See Arbuckle v. City of New York*, No. 14-cv-10248, 2016 WL 5793741, at *10 (S.D.N.Y. Sep. 30, 2016) (holding that "the requirement to attend court hearings, including for trial," is not a travel restriction). Considering *Faruki*, Plaintiff's malicious prosecution claim must be dismissed. *See Dollard v. City of New York*, 408 F. Supp. 3d 231, 238 (E.D.N.Y. 2019) (applying *Faruki* where the plaintiff was issued a "non-felony summons and made two subsequent court appearances"); *Rotenberg v. Town of Mamaroneck*, No. 08-cv-4703, 2010 WL 3468051, at *3 (S.D.N.Y. Aug. 24, 2010) ("[R]equiring plaintiffs to appear in court twice in connection with the summons—for an initial appearance and a one-day trial—is not a sufficient deprivation of liberty to rise to the level of a constitutional injury.").

The Second Circuit decisions finding that a Fourth Amendment seizure occurred are all inapposite. *See Rohman v. New York City Transit Authority*, 215 F.3d 208, 215–16 (2d Cir. 2000) (finding Fourth Amendment implicated where plaintiff made five court appearances); *Murphy v. Lynn*, 118 F.3d 938, 945–46 (2d Cir. 1997) (Fourth Amendment implicated where

plaintiff was subject to a post-arraignment order not to leave New York and made eight court appearances); *Swartz v. Insogna*, 704 F.3d 105, 108 (2d Cir. 2013) (Fourth Amendment implicated where "[t]he charge remained pending for several years, during which [the plaintiff] made three court appearances").[9] The Court concludes that Plaintiff's brief appearance at a single post-arraignment proceeding does not support a claim for malicious prosecution.

**III. Fair Trial**

Plaintiff raises a federal fair trial claim related to his criminal summons. He argues that Defendants "fabricated and forwarded evidence to a prosecutor that would be likely to influence a jury's decision." ECF No. 94 at 43. Defendants argue that this claim fails because Plaintiff

---

[9] It bears mentioning that several courts in this Circuit have found *Swartz* difficult to square with *Burg* and *Faruki*. *Burg* questioned whether the number of in-court appearances could "bear upon whether there was a seizure," finding it "hard to see how multiple appearances required by a court . . . can be attributed to the conduct of the officer" issuing the summons. 591 F.3d at 98. *Swartz* characterized this language as dictum and declined to apply it to the "context of a plaintiff who was required to appear in court in connection with criminal proceedings initiated by the defendant police officer." 704 F.3d at 112. But one month later, *Faruki*, citing *Burg*, held that the requirement to appear in court on two occasions was an insufficient deprivation of liberty. 517 Fed. Appx. at 2. *Faruki* did not cite *Swartz*, and courts have been struggling to reconcile the decisions ever since. *See Franco v. Gunsalus*, No. 22-339, 2023 WL 3590102, at *4 (2d Cir. May 23, 2023) (expressly declining to "address how *Faruki* and *Berg* interact with the rule articulated in *Swartz*"); *Oxman v. Downs*, 999 F. Supp. 2d 404, 413 (E.D.N.Y. 2014) ("It appears to the Court that case law from this Circuit is somewhat unclear with respect to the approach courts should take when considering [the deprivation of liberty element]."); *Kennedy v. City of New York*, No. 11-cv-1451, 2013 WL 3490351, at *5 (E.D.N.Y. July 10, 2013) (noting that "the Second Circuit's cases on this issue are hardly a seamless web"). Therefore, as an alternative ground for granting summary judgment on this claim, the Court holds that Defendants are also entitled to qualified immunity because the law is not clearly established. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.").

"cannot establish that any false information was forwarded to a prosecutor or that he suffered a sufficient deprivation of liberty as a result." ECF No. 146 at 11. Defendants are correct.

To establish a denial of the right to a fair trial, a plaintiff must prove that (1) an investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result. *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). Although federal fair trial and malicious prosecution claims are distinct, "courts have analyzed the liberty deprivation prong under the two claims similarly." *Gogol v. City of New York*, No. 15-cv-5703, 2017 WL 3449352, at *11 (S.D.N.Y. Aug. 10, 2017); *Vasicka v. Kerwin*, No. 18-cv-6858, 2022 WL 4641585, at *9 (E.D.N.Y. Sep. 30, 2022). Because the Court has already held that Plaintiff's single post-arraignment appearance was not a deprivation of liberty, it follows that the fair trial claim must be dismissed.

Furthermore, as Defendants observe, there is no evidence that any fabricated information was forwarded to prosecutors. Plaintiff does not argue that the charges Defendant Stosch included in his arrest paperwork, which he forwarded to the District Attorney's Office, were fabricated. ECF No. 144-16 (Stosch Deposition) at 101:22–25, 107:10–13. The knife charge was not included in the arrest report. ECF No. 144-10 at 2, 5. What's more, there is no indication that a prosecutor was ever involved in Plaintiff's criminal court proceedings. In his amended complaint, Plaintiff asserts that, in "New York City Summons Court," it is the police who "assume the prosecutorial authority abdicated by the Defendant City's District Attorneys, including the Brooklyn DA." ECF No. 94 at 2. The criminal court judge dismissed the case

when Defendant Stosch, not the Assistant District Attorney, failed to appear. ECF No. 144-14 at 7. Because Plaintiff cannot satisfy the forwarding requirement, his claim fails as a matter of law.

Plaintiff makes two arguments in response. He first contends that the criminal court itself was a "prosecuting agency," ECF No. 145 at 21–22, and that it "occupied the role of prosecutor" at his initial appearance, ECF No. 94 at 28. This argument is unsupported by the record, case law, or logic, and the Court does not consider it further.

Plaintiff next argues that the police themselves acted as prosecutors in his case. ECF No. 145 at 20–21. Plaintiff cites no authority for the proposition that a police officer's decision to forward evidence to himself violates the Constitution, and the Court is aware of none. To the contrary, the Second Circuit has held that the right to a fair trial is implicated "[w]hen a *police officer* creates false information . . . and forwards that information to *prosecutors*." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (emphasis added); *see also Davenport v. City of New York*, No. 15-cv-5890, 2017 WL 4356883, at *18 (E.D.N.Y. Sept. 28, 2017) ("Proof that a police officer forwarded the fabricated evidence to a prosecutor can be satisfied by direct evidence that the officer gave the evidence to the prosecutor or by other evidence from which it can be inferred that the officer forwarded the fabricated evidence to a prosecutor."). The forwarding requirement is important because the involvement of the District Attorney's Office in particular "works an unacceptable corruption of the truth-seeking function of the trial process."

*Ricciuti*, 124 F.3d at 130. Defendants are therefore entitled to summary judgment on this claim.[10]

**IV. First Amendment**

Plaintiff's final federal claim is that Defendant Stosch violated his First Amendment rights by supposedly retaliating against him for engaging in protected speech. ECF No. 94 at 38–39; ECF No. 145 at 18–20. The crux of the claim is that Defendant Stosch seized Plaintiff's phone and arrested him immediately after Plaintiff "pointed his phone" at Defendant Stosch. ECF No. 145 at 19.

To state a claim for First Amendment retaliation, a plaintiff must establish that (1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions effectively chilled the exercise of his First Amendment right." *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). The Supreme Court has held that a "plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). *Nieves* left open a "narrow qualification" for situations where a plaintiff presents "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 406–07.

Plaintiff's claim fails for many reasons. First, the Court has already held that Defendant Stosch had probable cause (or at least arguable probable cause) to arrest Plaintiff, so Plaintiff's First Amendment claim fails either on the merits or because of qualified immunity. *See id.* at

---

[10] Once again, the lack of clearly established law regarding the deprivation of liberty element entitles Defendants to qualified immunity. Defendants are also entitled to qualified immunity because there is no case law supporting Plaintiff's interpretation of the forwarding requirement. *See Matusak*, 165 F.4th at 712.

402; *Pinto v. City of New York*, 728 F. App'x 26, 31 (2d Cir. 2018) ("The existence of arguable probable cause entitles Officer Diaz to qualified immunity on Pinto's § 1983 claims for false arrest, First Amendment retaliation, assault and battery, and malicious prosecution.").

Plaintiff argues that he falls under the *Nieves* exception because he was "singled out for exercising his right to record." ECF No. 145 at 19. But he presents no "objective evidence" that similarly situated individuals not engaged in protected speech were treated differently. *Nieves*, 587 U.S. at 407. His unsupported assertion that "[l]ittering is ordinarily addressed by a summons" is nothing more than an *ipse dixit*. ECF No. 145 at 19. Although "very specific comparator evidence" is not necessary, *some* evidence is. *See Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (finding that a survey showing no one had ever been arrested for certain conduct satisfied the *Nieves* exception). In any event, even if littering is ordinarily addressed through a summons, the facts of this case are not ordinary. The evidence shows that Defendants began arresting Plaintiff only after a hostile crowd confronted them. ECF No. 144 at 37; Stosch BWC at 01:54–02:02. There is no record evidence that officers under similar circumstances "have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 587 U.S. at 406.

Second, the evidence does not support the conclusion that Defendant Stosch's actions were motivated or substantially caused by Plaintiff's decision to film him. *Kuck*, 600 F.3d at 168. Plaintiff's primary argument is that there was a supposed "temporal proximity" between Plaintiff filming Defendant Stosch and his subsequent arrest. ECF No. 145 at 19. But Plaintiff was filming the Defendants for about thirty seconds before they arrested him. Stosch BWC at 01:32–02:02. It was only after Defendant Casimir instructed the other officers to arrest Plaintiff that Defendant Stosch took the phone. *Id.* at 01:58–02:03. And contrary to Plaintiff's version of

events, Plaintiff was not "point[ing] his phone at Defendant Stosch" when Defendants arrested him. ECF No. 145 at 19; Stosch BWC at 02:02–02:03. Instead, the video shows that Defendant Casimir ordered Plaintiff's arrest after the hostile crowd impeded Defendants' ability to write the summons. Casimir BWC at 01:15–02:02. To put Plaintiff in handcuffs, it was necessary to take his phone. No reasonable jury could conclude from the footage that Defendants were motivated by a retaliatory animus. This claim is dismissed.

### V. Remaining State Claims

Having dismissed Plaintiff's Section 1983 claims, his New York law claims are the only ones remaining. The Court declines to address them. A court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). Because there are no remaining claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. All Section 1983 claims against Defendants are dismissed with prejudice, and the remaining state law claims are dismissed without prejudice. *See Green v. Dep't of Educ. of City of New York*, 16

F.4th 1070, 1074 (2d Cir. 2021) (dismissals for lack of subject matter jurisdiction are without prejudice).

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
November 25, 2026